STATE v. THOMAS DENTON.

(Filed 29 March, 1911.)

1. Court Sittings—Proceedings—Attorneys—Notice.

It is the duty of attorneys in a cause to take notice of the regular sittings of the Superior Court, and not that of the trial judge to send for them when they are absent, in considering their case, except "for some unusual reason," within the meaning of Rule 27 of the Supreme Court. Revisal, sec. 1541.

2. Same—Instructions—Absence of Attorneys—Discretion of Court.

Whether it is the duty of a judge of the Superior Court to send for counsel in a case while considering it, at a regular sitting in term, for the "unusual reason" required by Rule 27 of the Supreme Court, is a matter within the discretion of the trial judge, and will not be considered on appeal.

3. Same.

When a case has been given to the jury, and the jury requests the trial judge to instruct them upon the law as to certain of its

phases, it is not error for the court to comply with the request of the jury, in the absence of counsel, when done at a regular sitting of the court in term.

### 4. Spirituous Liquors—Unlawful Sale—Abettors—Evidence—Instructions.

Upon trial for violating the general prohibition law in the sale of whiskey, a charge upon supporting evidence was held correct in substance as follows: That if the jury should be satisfied from the evidence that H. owned the whiskey and brought it in a basket to defendant's home for the purpose of selling it there, and sold a pint to one D. in defendant's presence and with his knowledge, the defendant would be guilty of aiding and abetting the sale; and that as in misdemeanors all aiders and abettors are principals, the defendant would be guilty as a principal in the unlawful sale.

### 5. Spirituous Liquors—Unlawful Sale—One Act—Abettors—Evidence Sufficient.

One is guilty of an unlawful sale of spirituous liquor as a principal when he allows the use of his home for the latter to more secretly effect the sale there; and evidence tending to show that this was done and the price paid while at defendant's home in a room wherein he was lying on a lounge, though without evidence of his receiving a part of the price paid, is sufficient for his conviction as a principal in aiding and abetting the unlawful act.

HOKE and WALKER, JJ., dissenting.

APPEAL from *Cook, J.,* at September Term, 1910, of WAKE.

Indictment for the illicit sale of spirituous liquor. The defendant was convicted, and from the judgment of the court sentencing him to the roads, appeals to this Court.

*Attorney-General Bickett and Assistant Attorney-General Jones for the State.*

*Holding & Snow and J. C. L. Harris for defendant.*

BROWN, J. The record presents only two assignments of error:

1. After the jury had retired, they returned to the courtroom for further instructions. In the absence of the defendant's counsel, and without notice to him, the court deliv-

ered instructions to the jury upon a phase of the case concerning which they requested instruction. It is admitted on the argument that this occurred during the regular session of the court, and not during a recess.

Counsel must take notice of the regular sittings of the Superior Courts, the principal *nisi prius* courts of the State, and the judge presiding is not required to send for an attorney when his case is under consideration. Rule 27, in the Rules of, Practice in the Superior Courts, revised and adopted by the Justices of the Supreme Court by virtue of Revisal of 1905, sec. 1541; 140 N. C., 685.

It may be the duty of the presiding judge "for some unusual reason," as stated in that rule, to send for counsel even during a regular session of the court, but from force of circumstances that is a matter which must be left to his sound discretion.

This point was considered by the Supreme Court of Iowa in *S. v. Hale,* 91 Ia., 370, where it is said: "That counsel was not advised of the court's action before the jury was brought in appears to have been his own fault. He could not be found. Counsel who are interested in a cause in which a jury is deliberating know that they may be wanted at any moment, and must either be in attendance at court or advise the court or proper officers where they can be found. Judicial proceedings cannot stop because of a failure of counsel to do their duty in this respect."

Where additional instructions are given to a jury during a recess of the court, we think counsel are entitled to be present, or at least one of them on each side, and that they should be notified, if to be found.

2. His Honor charged the jury that if they should be satisfied from the evidence in the case that the State's witness, Hodge, owned the whiskey and brought the same in a basket to defendant's home for the purpose of selling it there, and that Hodge, on the night in question, sold a pint of this whiskey to the witness Dempsey, in the presence of defendant and with his knowledge, then the defendant would be guilty of aiding and abetting the sale by Hodge to Dempsey, and that, since in mis-

demeanors all aiders and abettors are principals, the defendant would be guilty, as a principal, of selling whiskey to Dempsey.

State's witnesses, Dempsey and Hodge, testified that on the night of 19 March, 1910, they went to defendant's home and bought from him a pint of whiskey each; that defendant was lying on a lounge and was the only person in the room; that twelve or eighteen half-pint bottles of whiskey were on the table; and each laid down 50 cents on the table and took a pint of whiskey; that at same time defendant gave each a drink of "peach and honey."

The testimony of defendant's witnesses is to the effect that State witness Hodge brought this whiskey to defendant's house and placed it on the table; that on the night Dempsey bought the whiskey Hodge picked up the 50 cents from the table; that defendant was present in the room lying on the lounge, but did not get the money paid for the whiskey.

All of the defendant's evidence tends to prove that Hodge was using defendant's home as a place where he could sell his whiskey with less danger than at his store, and that Hodge sold it there in defendant's presence on the occasion in question and received the money for it.

The instruction excepted to was given in response to a request from the jury for further instructions upon that phase of the evidence, that "the whiskey had been brought to defendant's home by Hodge and allowed by defendant to be sold by Hodge in the house and in the presence of defendant," and the instruction presupposes such finding of facts. In view of the evidence to support it, we think the instruction entirely correct.

It is well settled that if one aids and abets another in the commission of a misdemeanor, he is guilty as principal, and this elementary principle of law has been applied to one who aids another in the illicit sale of liquor. In the text of Cyc., vol. 23, p. 209, we find it laid down that, "Any person who aids and abets or assists in or procures an unlawful sale of intoxicating liquors may be indicted as a principal in the transaction, such offense being a misdemeanor."

STATE *v.* DENTON.

Assuming the facts to be as stated in the instruction, how could the defendant more effectually aid and abet Hodge in his criminal traffic than by permitting him to sell his whiskey in the privacy of defendant's own home, where there was much less probability of detection than at Hodge's store? Suppose a band of counterfeiters had been found in defendant's house manufacturing their spurious money in defendant's presence, could it be said that he was not thereby aiding and abetting them?

It is not even suggested that Hodge had taken possession of defendant's house *vi et armis* and that defendant was under duress, or that he was *non compos mentis.* It is not an inference to be drawn by the jury from the circumstances in evidence, but the law itself infers that, in the absence of any evidence of duress or insanity, what was done in defendant's home and in his presence was done by his consent and contrivance.

To the mind of the writer, the proposition embodied in the instruction is so evidently correct that it is difficult to discuss, and needs no citation of authority to support it.

Nevertheless, the Supreme Court of Massachusetts has decided practically the question involved in this case. In *Com. v. Hayes,* 167 Mass., 176, it is held that one may be convicted for the unlawful sale of or keeping for sale of intoxicating liquors if the jury find that he kept or maintained the premises, and that any part thereof was, with defendant's consent, used for the illegal sale or keeping of spirituous liquors.

If the defendant knowingly permitted Hodge to use his home for the illicit sale of whiskey on one occasion, he is an aider and abettor on that occasion, and it is as much a violation of law as if he habitually permitted it.

No error.

HOKE, J., dissenting: There was evidence for the State direct and positive that defendant sold a pint of whiskey to L. A. Dempsey, a State's witness, and to another witness by the name of Hodge, but I am of opinion that the Court is not sufficiently advertent to the fact that the jury evidently were not willing to accept or act on this testimony, but that defend-

ant has been convicted on the theory that defendant's evidence is true. This testimony very correctly summarized in the opinion of the Court was in part as follows: "Hodge brought the basket of whiskey to our house and asked Tom to keep it for him. This was on Saturday before the night he and Dempsey came there. He waited until Tom came. It sat there on the desk from the night Hodge brought it there. I never saw Tom take anything out of the basket at any time. I saw Hodge pick up the 50 cents and put it in his pocket. Tom was lying down at the time, and he did not get any of the money. Hodge was pretty drinky. I am defendant's wife." In this connection the State's witness Dempsey testified: "After Denton was arrested and before he was tried, Hodge told me to go to see Denton and tell him that if he (Denton) would stand out of the way, he (Hodge) would take care of his family while he was gone. I went and told Denton what Hodge said. This was on Monday after we got the whiskey." As to the progress of the trial the record then states: "The jury, after remaining out for some time, came into court and asked for further instructions upon the question of the whiskey having been brought to defendant's house by the State's witness, Hodge, and ALLOWED by defendant to be sold by Hodge in the house and in the presence of defendant." In response to the inquiry, his Honor said to the jury: "That if they should be satisfied from the evidence in the case that the State's witness Hodge owned the whiskey and brought the same into defendant's house for the purpose of selling it there, and that Hodge, on the night in question, sold a pint of the whiskey to the witness Dempsey, in the presence of defendant and with his knowledge, then the defendant would be guilty of aiding and abetting the sale by Hodge to Dempsey, and that since in misdemeanors all aiders and abettors are principals, the defendant would be guilty, as a principal, of selling whiskey to Dempsey." To this response the defendant in apt time excepted.

Undoubtedly, it is an elementary principle, as stated in the Court's opinion, that one who aids and abets another in the commission of a misdemeanor may be convicted as a principal.

And it is equally elementary that one does not necessarily become either an aider or abettor in a crime because it is committed on his premises, though it is done with his knowledge and in his presence. In Clark's Criminal Law, p. 103, it is said: "To aid and abet the commission of a crime is to assist or encourage the perpetrator. There must be some participation. Mere presence and neglect to endeavor to prevent a felony will not of itself make one a principal in the second degree," etc. And in McLean's Criminal Law, sec. 194, the author says: "Some degree of participation in the criminal act must be shown in order to establish criminal liability. Proof that one stood by at the commission of a crime without taking steps to prevent it, does not alone indicate such participation or combination in the wrong deed as to show criminal liability, although he approves the act." In like effect is *S. v. Douglas,* 26 Pac., 276; *White v. People,* 81 Ill., 334, and, so far as examined, the principle is uniformly approved.

There is no evidence that Hodge was in the habit of doing this thing. The one basket of whiskey is all that the testimony shows was brought to defendant's house. Neither the evidence of defendant on which the jury acted nor the charge of the court to which the exception was taken contains the suggestion that defendant knew that the whiskey was being brought to the house by Hodge for the purpose of being sold—as a matter of fact it came in defendant's absence, and, to my mind, by correct interpretation this question of the jury and response of the judge can and was only intended to mean that defendant was guilty as aider and abettor if Hodge brought the whiskey to the house of defendant and there sold it in his presence and with his knowledge. Such a conclusion might very well be drawn from the facts in evidence, but if it is done it should be by the jury and not by the court; for under the circumstances suggested guilt does not necessarily follow because of an alleged sale by Hodge on defendant's premises and in his presence. Our Constitution provides that "No person shall be convicted of crime but by the unanimous verdict of a jury of good and lawful men in open court," and this Court has been

uniformly insistent that this right shall be properly safe-guarded and applied in the administration of the criminal law. Speaking to this question in *S. v. R. R.,* 149 N. C., 512, the Court said: "The ruling made on the former appeal in this case, and sustained in the forcible opinion of *Associate Justice Brown,* was, that when there was conflict in the evidence on any essential feature of the charge, or when, though there was no such conflict, more than one inference of fact was permissible, and any one of these consistent with defendant's innocence, the question of his guilt or innocence was for the jury and not for the court. This is by no means a trivial or technical distinction, but goes to the integrity and very existence of the right of a citizen to a trial by jury. If, on the testimony, there is an inference of defendant's innocence permissible, and a judge is allowed to charge the jury, 'If they believe the evidence they will find defendant guilty,' this is condemnation by the judge, and the right of trial by jury, so justly valued as the ultimate protection of freemen under the forms of law, is usurped by the judge, and the constitutional rights of the defendant are denied him. 'No person shall be convicted of crime but by the unanimous verdict of a jury of good and lawful men in open court,' is the language of our Bill of Rights; and if there is an inference of guilt and one of innocence arising on the evidence, the jury must determine which inference shall be established. As said by *Henderson, J.,* in *Bank v. Pugh,* 8 N. C., 206: 'The jury are the constitutional judges, not only of the truth of the testimony, but of the conclusions of fact resulting therefrom.' " In the case from Massachusetts upon which the Court seems disposed to rely, the charge of the trial judge was that, "If the jury should find that the defendant kept and maintained the premises and that any part thereof not rented to Campbell was with the assent of defendant used for the illegal sale of intoxicating liquors, and that *was one* of the *purposes* for which said *premises was kept* by *defendant,* he should be convicted"—an entirely different proposition from that presented here. The defendant may be a person of humble position. He may be and

very probably is flagrantly guilty, but in the present case he embodies in his person and in his cause the constitutional right to a trial by jury. If it is struck down in him it is weakened for every citizen of the Commonwealth.

On the record I am of opinion that this conviction has not been had in accordance with law and that a new trial should be awarded.

ASSOCIATE JUSTICE WALKER concurs in the dissenting opinion.