*J. L. Mayson, W. D. Ellis Jr.,* contra.

---

### 3495. PHILLIPS *v.* THE STATE.

The evidence authorized the verdict of guilty. While the charge of the judge, to the effect that if the defendant rented a portion of the store to another person, and knew that whisky was being kept there, he would be guilty, is not abstractly a correct statement of the law, the undisputed testimony so incontrovertibly supports the inference of the defendant's guilt that the error is harmless.

DECIDED OCTOBER 23, 1911.

Certiorari; from Fulton superior court—Judge Bell. April 10, 1911.

Phillips was convicted in the criminal court of Atlanta of a violation of the prohibition law in keeping liquor on hand at his place of business. The evidence for the State shows that the police officers entered his store with a search warrant, and found in the rear

of the store a barrel and a half barrel of quart bottles of whisky, and a part of a barrel of pint bottles of whisky. There were also about two barrels of empty bottles of the same kind just outside the store, and, on the window sill, some empty whisky glasses and some spoons. The defense relied on was that the part of the store in which the whisky was found had been sublet by Phillips to J. H. Payne, who conducted a fish and oyster business there. The part thus sublet was a space about 12 by 14 feet in area, from the rear of the store up to the fifth post. · At this point there was a sign reading, "Office J. H. Payne, Fish & Oyster Dealer." This sign was written on a piece of pasteboard taken from the·top of a whisky barrel. The uncontradicted testimony is to the effect that there were no fish or oysters in the store, and that Payne's stock of merchandise consisted wholly of the barrels containing whisky. There was no partition. There was evidence of a sale of whisky by Payne at his house, but no evidence of a sale at the store by either Payne or Phillips. There was an entry on Phillips's cash-book of "$10 rent" from Payne. The judge charged the jury that if they believed, from the evidence, that the whisky was kept with knowl·edge of Phillips, in the part of the store rented to Payne, Phillips would be guilty.

*Hewlett & Dennis, Malvern Hill,* for plaintiff in error.

*H. M. Dorsey, solicitor-general, Lowry Arnold, solicitor,* contra.

RUSSELL, J. We think that the evidence was sufficient to authorize the jury to convict, and the judge's instruction referred to in the statement of facts was not prejudicial to the defendant, even though not correct as an abstract proposition of law. In view of the issues made by the evidence and the admissions of the defendant, we think that the renting of a portion of the store under the circumstances stated, and with·knowledge that whisky was being kept there, would make Phillips particeps criminis. The landlord must hide his knowledge behind something more substantial than a sign made from a piece of pasteboard taken from the top of a whisky barrel, advertising the sale of "fish and oysters" consisting of quart and·pint bottles of whisky. A landlord can not, under the circumstances shown in this case, say that he did not aid and abet the crime which he knew was being,committed by his tenant under his very nose.          *Judgment affirmed.*

POWELL, J., concurring specially. My associates vote for an affirmance on the ground that, while there was error, it was harmless. I vote for the same judgment on the ground that there was no error. The question is as to how far the proprietor of a place of business absolves himself from responsibility as to the keeping of intoxicating liquors in the room where the business is carried on by letting a definite portion of the space to another. We all agree that if the leasing of the space was a mere subterfuge, or was consummated with knowledge that the space would be used for the keeping of liquors, the lessor and the lessee would both be guilty of violating the law. I go further. In my opinion, if one having possession and control of a room, and occupying it as his place of business, lets space therein to another (no matter how free from any subterfuge or illegal intention the letting of the space may be at the time it is made), and thereafter the lessee of the space puts liquor therein, and the proprietor of the business knows of it and allows it, he is guilty of violating the statute. My associates think that, if the lease of the space is made in good faith, the landlord who operates the business so far loses control of the space as to exempt him from criminal responsibility for such uses as the lessee may make of it.

The Penal Code (1910), § 426 (the general prohibition law), among other things, makes it unlawful for any and all persons to "keep on hand at their place of business" any intoxicating liquors. This has been given a settled construction to the effect that the proprietor of the business must not only personally refrain from keeping liquors in the place of business, but he must not knowingly allow others to keep them there. We all agree to this as a general proposition. Now put this case: A. has a room in which he conducts a business. His goods and wares do not fill the whole room. In the rear is a space, say 20 by 25 feet in size. He stores liquors back there. We all agree that he violates the law. Now, say that, instead of personally storing the liquors in this unused space, he permits a friend to store them there, without actually leasing to him the space. We all agree that he violates the law. Again, say that, instead of permitting this friend to put the liquors there, he leases the space to this friend, and the latter uses his leased space to store liquors. We find all the physical conditions the same as in the previously stated propositions (the one room with a business

conducted therein, and with the space in it, so far as not used for that business, used for the storage of liquors—manifestly one of those physical situations which the statute was designed to prevent), and yet my associates seem to hold that unless these conditions come about through a lease made as a sham, or made for the purpose of allowing this condition to come about, no law is violated. The lease, a mere private contract between the parties, has converted a physical situation normally abhorrent to a public criminal statute into one of innocency. The lessee (the storer of the liquors) can not be indicted, for the mere storing of liquors is not a business, and his keeping is not a keeping on hand at his place of business. The lessor can not be indicted, because by leasing the space he has lost control over it, and hence is not responsible for the keeping of the liquors at his place of business. Now, I do not believe that it is this easy to avoid a criminal statute. In my opinion, he is just as guilty in the last case as in the first, if he knowingly permits the lessee of the space to keep intoxicating liquors in it. The position of my associates is, in effect, that the making of the lease affects the situation and changes the operation of the law. My position is that the situation affects the lease, and the law changes its operation.

I realize that the owner of the business must have the power to prevent the keeping of the liquors in the leased space, before he can rightfully be held criminally accountable for their being kept there. If the leasing of the space gives to the lessee such exclusive control over it that, if the lessor should enter upon it and put the liquors out, he would be guilty of a trespass, either civil or criminal, then the law will not hold the owner of the business (the lessor) criminally responsible because the lessee, thus holding the exclusive control, keeps the liquors there. But does the making of the lease give the lessee any such exclusive control as to bring about any such result? Can a lease be made which will have this effect? I say, no. The law will not let the owner of a room in which he himself conducts a business make such a contract as to space in that room as that the lessee of the space may use it in such a way as to bring about a condition which is directly repugnant to the legislative object and policy, as expressed in a public statute. Even if the minds of the parties are free from any thought or contemplation of such a condition at the time the contract is made, so that the contract

as made is silent on this subject, the mind of the law, so to speak, is still upon it, and writes into the contract an implied exception: the exception being that this space in this room which is used as a place of business must not be used for the keeping of liquors or for the bringing about of any other situation repugnant to the policy of the law. So that when space in a business room is thus let out the conditions are these: If the parties expressly contract that it may be used for the storage of liquors, the contract is void, and the proprietor of the premises is guilty of violating the law (the proposition as to which we are all agreed). If the parties expressly contract that it shall not be used for the storage of liquors, and the lessee nevertheless so uses it, the lessor, as a matter of course, may remove the liquors without any trespass; and if they are, under these circumstances, kept there with the lessor's knowledge, they are kept there by his acquiescence and implied consent. Hence he violates the law. If the contract is silent on the subject, the law writes in the exception against the keeping of the liquors in the room where the business is conducted, and the lessor would be equally exempt from an imputation of trespass in removing the liquors, and consequently equally guilty of violating the law if he acquiesces in their remaining there.

There is nothing novel in the proposition that the law will not permit the proprietor of a business so to let out space in his room as that he can not still exercise such general control over the premises as is necessary to the full observance of all police regulations that attend upon the conduct of that business. For example, under the statute against keeping open a tippling-house on the Sabbath, if the proprietor of a bar-room should let space in his room to a druggist (who could lawfully open up and sell on Sunday), he could not, when the doors were found open on the Sabbath, excuse himself from liability by saying that they were opened in order to allow the druggist access. It is common to speak of the transaction by which the owner of a room, in which he conducts a business, contracts to allow another to occupy space therein for some purpose as a lease, or as a contract of tenancy. For many purposes it is so, but not for all purposes. It is merely a concession in the nature of a tenancy, and is subject to limitations and implications which do not attend an ordinary tenancy. Such arrangements are not so common in this State as they are in some other

parts of the country, where the courts have been more often called upon to define the status of the parties. See Underhill on Landlord and Tenant, §§ 193, 198. The concessioner takes space in a room or building already devoted to business purposes, and from this circumstance the law readily implies limitations upon his occupancy, not to be implied in cases of ordinary tenancy. I think that my associates fail to see the importance of distinguishing between the case of one who lets out an entire room or building, and one who lets out a mere concession of space in a room already devoted to a business. One who lets out a building or room with knowledge that it is to be used for the purpose of violating the law does, as my associates hold, become an accomplice of him who uses it for his unlawful practices; and in such cases knowledge (or such connivance as to be an equivalent of knowledge) is an ingredient of the landlord's offense.

This rule has often been applied to statutes against maintaining places for the sale of intoxicating liquors, in other States as well as our own. See, for example, Commonwealth *v.* Haves, 167 Mass. 176 (45 N. E. 82); also Commonwealth *v.* Churchill, 136 Mass. 148 (noticing in this case, however, that the conclusion reached as to the manner in which the proprietor of the building should be indicted does not hold in this State, where all standing in an accessorial relation to a statutory misdemeanor may be indicted as principals). See, also, State *v.* Denton, 154 N. C. 641 (70 S. E. 839), holding that where the defendant knowingly permitted another to sell liquor in his (the defendant's) house, even though on only a single occasion, the defendant could be convicted as if he himself had sold the liquor, because one who permits liquor to be sold in his house, having the power to prevent it if he would, is an aider and abetter of the seller. But these cases, sound as they are, do not, in my judgment, state the full rule as applied to cases such as the one now before us. In my opinion, no lease or concession of space in a room used as a place of business can be made in such a way as that the concessioner can keep liquors in the space granted, with the knowledge of the proprietor, without rendering the latter subject to the penalties of the law which forbids a person from keeping liquors on hand at his place of business.