STATE v. ROY COCKRELL.

(Filed 9 March, 1949.)

**1. Homicide § 25—**

Evidence that defendant, armed with a gun, led his wife into a field where father and son were working, to force her to confess in their presence that she had had intimate relations with the father, that her alleged paramour fled, leaving the son at the scene, and that shortly thereafter defendant deliberately shot and killed his wife, together with testimony of statements thereafter made by him that he did what he intended to do, *is held* sufficient to sustain the jury's verdict of murder in the first degree, notwithstanding his evidence that he had been assaulted by the son with a pitchfork and that his assailant pulled his wife between them as he raised his gun to defend himself.

**2. Criminal Law § 81c (3)—**

Defendant, charged with uxoricide, contended that difficulty arose because of intimate relations between his wife and his landlord. *Held:* The action of the court in sustaining objection to question asked on cross-examination of the landlord whether he had not been accused of breaking up three homes theretofore, if error, cannot be held of sufficient prejudicial effect to warrant a new trial.

**3. Criminal Law § 81b—**

Appellant has the burden of showing that alleged error was prejudicial in order to be entitled to a new trial.

**4. Criminal Law § 77d—**

The Supreme Court can judicially know only what appears of record.

**5. Constitutional Law § 34d: Criminal Law § 46—**

While in a capital case, accused is entitled to have counsel present at every stage of the proceeding, it is the duty of counsel to observe what transpires during the regular sittings of the court and to arrange for his notification should the occasion arise.

**6. Criminal Law § 81b—**

The presumption of regularity prevails in the absence of a showing to the contrary, and where matter complained of does not appear of record, appellant has failed to make irregularity manifest.

**7. Criminal Law § 53m—**

Upon request from the jury, the court gave additional instructions, presumably at regular session of court. *Held:* Counsel is charged with notice of matters transpiring during regular session of court, and therefore even if counsel for defendant were absent when the additional instructions were given, such absence would not perforce result in a new trial.

**8. Same—**

Objection to the giving of additional instructions in the absence of counsel should be raised in the trial court and a finding and ruling made thereon as the basis for an exceptive assignment of error.

APPEAL by defendant from *Bone, J.,* November-December, 1948, of NASH.

Criminal prosecution on indictment charging the defendant with the murder of his wife, Eva Batts Cockrell.

The record discloses that on the afternoon of 2 November, 1948, Berry Joyner and his son Arthur were getting up hay and loading it on a truck in a field about 200 yards from the house in which the defendant lived with his wife and children. Arthur Joyner was throwing the hay up on the truck with a pitchfork and his father was on the truck packing it down. The defendant was a share-crop tenant on the farm of Berry Joyner and had been arrested three times during the year, once in May at the instance of the landlord, and twice in September on warrants sworn out by his wife. The defendant suspected his landlord with inciting his wife to swear out the warrants and the two with conniving to keep him in jail. He says that his wife confessed to him on 2 November, 1948, that Berry Joyner had over-persuaded her to yield to his embraces and that he asked her to go with him into the field and make the same confession in the presence of her alleged paramour. As they approached the Joyners, the defendant had a shotgun in his right hand and was holding his wife's left arm or left hand. Some words passed between

the defendant and Berry Joyner, whereupon Arthur Joyner joined in the conversation and told his father to run or get out of the way, which he did. The only persons then on the scene were Arthur Joyner, who had a pitchfork, the defendant, who had a gun, and the defendant's wife, who was unarmed. The defendant lifted his gun to his shoulder and fired. His wife was shot in the head and she was killed instantly.

Later that afternoon the defendant told Everette Morgan just before the officers arrived, that he had "played hell." He said, "I went down there to kill them all, but I killed my wife instead; I especially wanted to kill Berry Joyner, but the G . . . d . . . s.o.b. is too sorry to die."

The defendant told Deputy Sheriff Ollie Laughter, when taken into custody, that he had "done exactly what he wanted to do." Continuing he said: "I caught them again this morning. . . . I have killed her and I want the court to do what they think is right, give me 35 years. . . . You ought to get Berry Joyner for speeding. . . . He is the damdest runningest old man I've seen."

G. W. Bone testified that on the following morning, while in the hospital, "the defendant said he killed the one he wanted to kill, his wife; I asked him why didn't he kill Mr. Joyner, and he said he was too sorry to die."

The defendant testified that when he and his wife approached the truck Berry Joyner "commenced to look at us just like a turkey, and, well, if he had had wings I believe he would have flew, and when we got up there I says, 'All right, Mr. Joyner, you go and take out a warrant for my wife, she has told on you this time,' and he says, 'Get him, Arthur, get him.'"

The defendant further testified that Arthur Joyner started at him with a pitchfork, and as he raised his gun to defend himself, his assailant pulled the defendant's wife between them and she was shot in the head as he was attempting to ward off the pitchfork thrust; that he never intended to kill his wife; that he could have done that at the house without going out to the truck. He denied the testimony of the several witnesses as to what he had said to them about the shooting, contending that if he did make such statements he was not in condition to appreciate or know what he was saying. The defendant was under the influence of an intoxicant at the time of the shooting.

Verdict: Guilty of murder in the first degree as charged in the bill of indictment.

Judgment: Death by asphyxiation.

The prisoner appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Leon T. Vaughan for defendant.*

STACY, C. J.   The State's evidence was quite sufficient to make out a case of murder in the first degree.   The defendant's evidence, on the other hand, supported his version of the matter.   The jury has returned a capital verdict and rejected the defendant's plea of self-defense in a trial free from reversible error.   We can do none other than uphold the judgment.

Berry Joyner was called as a witness for the prosecution.   He was asked on cross-examination "if he had not been accused of breaking up three homes before this time?"   Objection sustained; exception.   While the ruling on this objection might well have been otherwise, it does not appear that it had any appreciable effect on the verdict or that baneful consequences resulted therefrom.   To work a new trial the appellant must show that he was prejudiced by the court's action.   Error alone, or inconsequential error, will not suffice.   *S. v. Creech,* 229 N.C. 662; *S. v. Gibson,* 229 N.C. 497.

Sometime after the jury had retired to consider the case, they returned to ask the Judge to state again the precise meaning of premeditation. This was done with exactitude and aptly applied to the facts of the case. The defendant now complains that this further charge was given in the absence of his attorney.   The record fails to show that the requested instruction was given in the absence of counsel for the defendant.   We can know judicially only what appears on the record.   *Ericson v. Ericson,* 226 N.C. 474, 38 S.E. 2d 517.   Hence, no irregularity in this respect has been made manifest.

True it is, that in a capital case the accused is entitled to have his counsel present at every stage of the proceeding, and this right is usually observed.   Conversely, however, it is the duty of counsel, pending the consideration of the case, to observe what transpires during the regular sittings of the court, and to arrange for his notification should occasion arise.   The presumption of regularity prevails in the absence of a contrary showing.   *S. v. Harris,* 204 N.C. 422, 168 S.E. 498.   Presumably, the instruction was given at a regular session of the court.   *S. v. Stanley,* 227 N.C. 650, 44 S.E. 2d 196.   Thus, the absence of counsel when the instruction was given, even if established, would not perforce result in a new trial.   *S. v. Denton,* 154 N.C. 641, 70 S.E. 839.   See *Burns v. Laundry,* 204 N.C. 145, 167 S.E. 573, and cases there cited.   As basis for an exceptive assignment of error, the point should have been raised in the trial court and a finding and ruling made thereon.

On the record as presented, the verdict and judgment will be upheld.

No error.