## STATE v. CHARLES GALES.

(Filed 19 May, 1954.)

**1. Criminal Law § 56—**

Defects or irregularities in the drawing or organization of the grand jury may not be presented by motion in arrest of judgment.

**2. Indictment and Warrant § 12—**

Motion to quash the indictment as a matter of right on the ground of defect or irregularity in the drawing or organization of the grand jury must be made before arraignment and plea; such motion made after plea is addressed to the discretion of the court; after the petit jury is sworn and impaneled, the court has no discretionary power to entertain such motion.

**3. Grand Jury § 2: Statutes § 12—**

A Public-Local law providing for rotating grand juries in a designated county and repealing a part of a former law on the subject (Chapter 465 Public-Local Laws 1935; Chapter 104 Public Laws 1923), was in force on the effective date of the General Statutes, but through inadvertence was overlooked and the repealed statute was incorporated in the General Statutes (G.S. 9-25). *Held:* The Public-Local law remains in effect. G.S. 164-7.

**4. Homicide § 17—**

Testimony to the effect that defendant had intentionally assaulted the deceased, inflicting personal injuries, on an occasion antedating the fatal assault, *held* competent as bearing on intent, malice, motive, premeditation, and deliberation on the part of defendant.

**5. Criminal Law § 78d (3) : Trial § 15—**

A defendant waives objection to the unresponsive part of the answer of a witness by failing to make a specific motion to strike out that particular part.

**6. Homicide § 25—**

Evidence in this case *held* sufficient to be submitted to the jury on the question of defendant's guilt of murder in the first degree. G.S. 14-17.

APPEAL by prisoner from *Clifton L. Moore, J.,* and a jury, at January Term, 1954, of HOKE.

Criminal prosecution upon an indictment charging the prisoner with the first degree murder of his wife.

The State's evidence gave this version of the heart-rending tragedy:

1. The prisoner, Charles Gales, and the deceased, Lucille Gales, were husband and wife. They maintained a home for themselves and their small children upon a farm in Hoke County, where he pursued the calling of a tenant farmer.

2. The prisoner beat his wife several times during the year of the homicide. He was twice arrested and tried for so doing upon warrants issued by the Recorder's Court of Hoke County at her instance. At the first trial, which occurred in May, 1953, he was convicted and sentenced to a term on the roads; and at the second trial, which took place four or five days before the homicide, he was acquitted because his wife retracted in open court the matters stated in the criminal complaint upon which the warrant had been issued.

3. While he was confined in jail awaiting his second trial, the prisoner declared that "if his wife put him in jail any more, he was going to kill her."

4. After the midday meal on 1 October, 1953, the prisoner laid violent hands upon his wife and threatened "to kill . . . his oldest boy and . . . her."

5. The wife thereupon left the family dwelling, where this assault occurred; dispatched a neighbor to inform the judge of the Recorder's Court of the prisoner's conduct and threat; and repaired to a cotton patch, where she and the children undertook to pick cotton.

6. The prisoner followed his wife to the cotton patch, and charged her with having "sent for the law." When she denied the charge, he informed her that "he was leaving" and requested her to "go to the house with him and help him pack his clothes." She "said she was not going" because "he wanted to take her up there and fight her."

7. The prisoner afterwards confessed that he had determined to kill his wife before he went to the cotton patch, and that he sought to induce her "to go to the house with him" so he could kill her out of the sight of the children.

8. When his wife refused to accompany him, the prisoner went to the house, and armed himself with the detached barrel of a double-barreled shotgun.

9. The prisoner returned to the cotton patch with this weapon. His wife attempted to flee. He outran her, felled her, and beat her with the shotgun barrel until her brains exuded from her crushed skull and she died. He then kicked her lifeless body, and exclaimed: "Now, you damn bitch. I know you are dead."

10. The prisoner departed from the scene of the slaying at this juncture. Several hours later he surrendered to peace officers who were

searching for him. He told the officers that he had killed his wife. They asked him whether he meant to kill her. He replied: "I sure did." They asked him whether he knew his wife was dead when he quit beating her. He responded: "If I had not, I would have still been beating her."

11. The prisoner was a normal man at the times mentioned in paragraphs 3, 4, 5, 6, 7, 8, 9, and 10. Moreover, "he did not give any appearance of being drunk or under the influence of anything."

The prisoner offered evidence to the effect that "he did not play with other children" during his childhood; that "he was always slow in his learning," and for that reason did not advance beyond the fourth grade in school; that his mother died by her own hand in a fit of mental depression, and one of his uncles suffered at times from insanity; that he suffered a head-injury in a fall after attaining his maturity, and was not "in his right mind at times"; that four days before the date named in the indictment, he obtained 16 capsules from a drug store on the prescription of his physician for "congestion in the head" incident to a cold; that each of these capsules contained one-fourth of a grain of codeine, an alkaloid obtained from opium; that he took "6, 7, 8, or a handful" of these capsules at the same instant for the purpose of destroying himself while his wife and children were in the cotton patch picking cotton; and that he became unconscious a few minutes later and had no knowledge of anything that happened from that time "until he woke up . . . in the woods" just before he allegedly surrendered to the peace officers.

The trial judge charged the jury that it could return one of these verdicts: (1) Guilty of murder in the first degree; (2) guilty of murder in the first degree with recommendation that the punishment be imprisonment for life in the State's prison; (3) guilty of murder in the second degree; (4) guilty of manslaughter; or (5) not guilty.

The jury returned a verdict finding the prisoner guilty of murder in the first degree, but did not recommend that his punishment should be imprisonment for life in the State's prison. The trial judge entered judgment that the prisoner suffer death by the administration of lethal gas, and the prisoner excepted and appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*
*H. W. B. Whitley for the prisoner.*

ERVIN, J. The prisoner asserts by his assignments of error that the trial judge erred in denying his motion to quash the indictment, in admitting certain testimony of the State's witness Gurney R. Lane, in refusing to withdraw from the petit jury the question of first degree murder, in charging the petit jury, in disallowing his motion for a vacation of the

verdict and a new trial, in overruling his motion in arrest of judgment, and in entering judgment.

The indictment was returned at the November Term, 1953, of the Superior Court of Hoke County by the grand jury of eighteen members, nine of whom were drawn at that term and nine of whom were drawn at the previous April Term.

After pleading "not guilty" to the charge, the prisoner moved to quash the indictment on the ground that the grand jury was drawn and organized in violation of this provision of G.S. 9-25: "At the April term of superior court held for the county of Hoke a grand jury shall be drawn, . . . and it shall serve until the following April term, Hoke superior court." He undertook to raise the same point a second time subsequent to the verdict by his motion in arrest of judgment.

An objection to an indictment based on defects or irregularities in the drawing or organization of the grand jury must be taken by a motion to quash the indictment. G.S. 9-26; *Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513. It cannot be urged in arrest of judgment. *S. v. Sears,* 61 N.C. 146. The motion to quash must be seasonably made. These rules regulate the time for the motion: (1) An accused may make the motion to quash the indictment as a matter of right up to the time when he is arraigned and enters his plea; (2) the presiding judge has the discretionary power to permit the accused to make the motion to quash the indictment as a matter of grace after his plea is entered and until the petit jury is sworn and impaneled to try the case on its merits; and (3) the presiding judge has no power to entertain a motion to quash the indictment at all after the petit jury is sworn and impaneled to try the case on its merits. An accused waives any objection to the grand jury which indicts him on the ground of defects or irregularities in its drawing or organization unless he takes the objection by a motion to quash the indictment before entering a plea to the merits. *Miller v. State, supra; S. v. Banner,* 149 N.C. 519, 63 S.E. 84; *S. v. Gardner,* 104 N.C. 739, 10 S.E. 146.

The trial judge observed these principles in denying the motion to quash the indictment and the motion in arrest of judgment. The prisoner waived his objection to the grand jury by his plea to the merits. His subsequent motion to quash came too late.

We deem it not amiss to note in passing from this phase of the appeal that the grand jury was drawn and organized in conformity with Chapter 465 of the Public-Local Laws of 1935, which provides "for rotating grand juries in Hoke County" and was in force on the effective date of the General Statutes. The provision invoked by the prisoner was originally enacted as a part of Chapter 104 of the Public Laws of 1923, which was repealed by Chapter 465 of the Public-Local Laws of 1935. The com-

pilers of the General Statutes overlooked this repeal of Chapter 104 of
the Public Laws of 1923, and inadvertently incorporated the provisions of
the repealed statute in G.S. 9-25. Their action in so doing did not impair
the validity of Chapter 465 of the Public-Local Laws of 1935 in any way
because the General Assembly has decreed in express terms that "the
General Statutes . . . shall not have the effect of repealing . . . public
local statutes . . . if such statutes were in force on the effective date of
the General Statutes." G.S. 164-7.

The State sought to draw from its witness Gurney R. Lane a descrip-
tion of personal injuries suffered by the deceased in a beating which the
prisoner admitted he administered to her about 1 March, 1953. The
solicitor propounded these questions to the witness and elicited these
replies from him: "(Q.) When his wife came to your house, did you
observe her? (A.) Yes. (Q.) What was her condition? (A.) She had
a bruised place on her shoulder and on her leg down here. She had a
bruised place on this leg, too. She walked and caught a ride from where
they live to my house. She wanted to borrow some money." The pris-
oner objected generally to each question, but did not move to strike either
answer in whole or in part. The evidence indicating that the prisoner
intentionally inflicted personal injuries upon the deceased on an occasion
antedating the homicide was responsive to the questions put to the witness.
Moreover, it was admissible as bearing on intent, malice, motive, pre-
meditation, and deliberation on the part of prisoner. S. v. Ray, 212 N.C.
725, 194 S.E. 482; S. v. Horne, 209 N.C. 725, 184 S.E. 470. The pris-
oner waived any objection to the unresponsive part of the second answer
by failing to make a specific motion to strike out that particular part.
23 C.J.S., Criminal Law, section 1073. We note, moreover, that the
prejudicial character of the unresponsive part is not manifest.

The trial judge rightly refused to withdraw from the petit jury the
question of first degree murder. The State's evidence was sufficient to
show that the prisoner committed a willful, deliberate, and premeditated
murder within the meaning of the statute dividing murder into two
degrees. G.S. 14-17; S. v. Lamm, 232 N.C. 402, 61 S.E. 2d 188; S. v.
Cockrell, 230 N.C. 110, 52 S.E. 2d 7; S. v. Cash, 219 N.C. 818, 15 S.E.
2d 277; S. v. Wall, 218 N.C. 566, 11 S.E. 2d 880; S. v. Hawkins, 214
N.C. 326, 199 S.E. 284.

The assignments of error relating to the charge have received consid-
eration commensurate with the gravity of the case. They do not present
any novel or unusual question requiring elaboration, or point out any
error of commission or omission warranting a new trial.

The exception to the overruling of the motion for a vacation of the
verdict and a new trial and the exception to the entering of the judgment
are formal and require no discussion.

Prejudicial error has not been made to appear. Hence, the judgment of the trial court must be upheld.

No error.