STATE v. MARY ELIZABETH CLYBURN, CLAUD EDWARD GLENN, JESSE WILLARD GRAY, VIVIAN ELAINE JONES, DOUGLAS ELAINE MOORE, MELVIN HAYWOOD WILLIS, VIRGINIA LEE WILLIAMS.

(Filed 10 January, 1958.)

1. **Indictment and Warrant § 12—**

   A motion made after conviction to quash the warrant is addressed to the discretion of the court, and the denial of the motion is reviewable solely for abuse of discretion.

2. **Trespass § 10—**

   In a prosecution for criminal trespass, nonsuit is proper if defendants were merely exercising their constitutional rights.

3. **Trespass § 9—**

   The person in lawful possession of a private enterprise may accept or reject patrons for whatsoever whim suits his fancy; G.S. 14-126 and G.S. 14-134 place no limitation on the right of the possessor to discriminate between patrons on the ground of race.

4. **Constitutional Law § 20—**

   The Fourteenth Amendment to the Constitution of the United States creates no new privileges, but merely prohibits the abridgment of existing privileges by state action and does not proscribe the right of an operator of a private enterprise to select the clientele he will serve and base such selection on race if he so desires.

5. **Same—**

   The fact that the proprietor of a private enterprise pays a license or privilege tax, and that persons he has refused to serve and whom he has requested to leave are charged with trespass in a warrant signed by an officer, does not render the proprietor's discrimination on account of race action on the part of the State.

6. **Criminal Law §§ 31, 151—**

   The courts will not take judicial notice of municipal ordinances, but such ordinances must be proved as prescribed by G.S. 160-272, G.S. 8-5, and where the record does not indicate that a municipal ordinance was offered in evidence or called to the attention of the court, if such ordinance was then in effect, reference to such ordinance in the brief will be disregarded.

7. **Trespass § 1c—**

   If a person enters on land without permission or invitation, express or implied, and without legal right or *bona fide* claim of right, and refuses to comply with an order to leave after his presence is discovered, such person is a trespasser from the beginning.

8. **Trespass § 9—**

   Persons of the Negro Race who enter that part of the premises of a private enterprise reserved for white clientele, and who refuse to leave upon order of the proprietor, are guilty of a wrongful entry within the meaning of G.S. 14-126, even though their original entrance was peaceful. G.S. 14-134 is applicable where the entry is with force.

APPEALS by defendants from *Moore (Clifton L.), J.,* July 8, 1957 Criminal Term of DURHAM.

On 23 June 1957 a warrant issued from Durham Recorder's Court for defendant Clyburn, charging that she unlawfully entered upon the land of L. A. Coletta and C. V. Porcelli after being forbidden to do so and did "unlawfully refuse to leave that portion of said premises reserved for members of the White Race knowing or having reason to know that she had no license therefor . . . ."

Similar warrants issued for each of the other defendants. Defendants challenged the warrants by pleas of not guilty. The court found defendants guilty and imposed a fine. Defendants thereupon appealed to the Superior Court. There the cases were consolidated for trial. The jury returned verdicts of guilty. Judgments were entered imposing a fine in each case. Defendants assigned errors and appealed.

*Attorney General Patton and Assistant Attorney General Moody for the State.*

*William A. Marsh, Jr., M. Hugh Thompson, C. O. Pearson, and F. B. McKissick for defendant appellants.*

STATE *v.* CLYBURN, GLENN, GRAY, JONES, MOORE, WILLIS, WILLIAMS.

RODMAN, J. The questions propounded by appellants as arising on the assignments of error may be stated as follows: (1) Must a property owner engaged in a private enterprise submit to the use of his property by others simply because they are members of a different race? (2) Was there error in the charge as to what sufficed to constitute a violation of G.S. 14-134?

The questions are stated in the order of priority selected by appellants and are accordingly so treated.

There is no substantial dispute with respect to the facts. L. A. Coletta, with his partner, owned a building at the corner of Roxboro and Dowd Streets in Durham. There they did business under the name of Royal Ice Cream Company, retailing ice cream and sandwiches. The building is separated by partition into two parts. One part has a door opening on Dowd Street; the other portion has a door opening on Roxboro Street. Each portion is equipped with booths, a counter, and stools. Over the Roxboro Street door is a large sign marked "White," and over the Dowd Street door is a similar sign marked "Colored." Sales are made to members of the different races only in the portions of the building as marked.

Defendant Moore is pastor of Asbury Temple, a Methodist Church located on Braswell Street, a mile or mile and a half from the business conducted by Royal Ice Cream Company. Defendants gathered at the church to discuss the "plight of employment of qualified Negro young people."

Led by defendant Moore, they went from the church to the Royal Ice Cream Company, parked their car to the rear of the establishment and proceeded through the back door to the portion of the store set apart for white patrons. Defendant Moore gave orders to the clerk for each of the defendants. The clerk refused to serve defendants and called the manager.

Moore testified: "Then Mr. Coletta talked to me and said he did not want to cause any trouble but he wanted us to leave, but I said, as a Christian, I cannot possibly leave, that we wanted to be served as American citizens and, above all, as persons who believe in the Lord Jesus Christ. . . . We spoke in voices so that other people could hear, that is, other people in the room. Mr. Barnhill (a police officer) told me that I was under arrest. However, he said if we would leave he would not arrest us, but I told him, as a Christian, and believing that the power of the Church is above the State, and that's where the State gets its ultimate power, and that as American citizens, that we could not leave without doing damage to the Constitution. I could not leave. Mr. Coletta told us that he would serve us on the colored side but not on the white side."

STATE v. CLYBURN, GLENN, GRAY, JONES, MOORE, WILLIS, WILLIAMS.

The evidence shows the partitioning of the building and provision for serving members of the different races in differing portions of the building was the act of the owners of the building, operators of the establishment. Defendants claim that this, separation by color for service, is a violation of their rights guaranteed by the Fourteenth Amendment to the Constitution of the United States.

Defendants, by motion first made in the Superior Court, sought to quash the warrant. This motion, made after conviction and while the cases were pending on appeal, was addressed to the discretion of the court. The court did not abuse its discretion in overruling the motion. S. v. St. Clair, 246 N.C. 183, 97 S.E. 2d 840; S. v. Gales, 240 N.C. 319, 82 S.E. 2d 80; Miller v. State, 237 N.C. 29, 74 S.E. 2d 513 (cert. den. 345 U.S. 930, 97 L.Ed. 1360); S. v. Suddreth, 223 N.C. 610, 27 S.E. 2d 623; S. v. Beard, 207 N.C. 673, 178 S.E. 242.

While defendants did not properly preserve their right to assert constitutional protection by the motion to quash, nevertheless, if the evidence, as defendants claim, establishes that defendants were merely exercising their constitutional rights, punishment for so acting should not be inflicted and defendants' motion to nonsuit should have been allowed

Our statutes, G.S. 14-126 and 134, impose criminal penalties for interfering with the possession or right of possession of real estate privately held. These statutes place no limitation on the right of the person in possession to object to a disturbance of his actual or constructive possession. The possessor may accept or reject whomsoever he pleases and for whatsoever whim suits his fancy. When that possession is wrongfully disturbed it is a misdemeanor. The extent of punishment is dependent upon the character of the possession, actual or constructive, and the manner in which the trespass is committed. Race confers no prerogative on the intruder; nor does it impair his defense.

The Fourteenth Amendment to the Constitution of the United States created no new privileges. It merely prohibited the abridgment of existing privileges by state action and secured to all citizens the equal protection of the laws.

Speaking with respect to rights then asserted, comparable to rights presently claimed, Mr. Justice Bradley, in the Civil Rights Cases, 109 U.S. 3, 27 L.Ed. 835, after quoting the first section of the Fourteenth Amendment, said: "It is state action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the Amendment. It has a deeper and broader scope. It nullifies and makes void all state legislation, and state action of every

kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty, or property without due process of law, or which denies to any of them the equal protection of the laws. It not only does this, but, in order that the national will thus declared, may not be a mere *brutum fulmen,* the last section of the Amendment invests Congress with power to enforce it by appropriate legislation. To enforce what? To enforce the prohibition. To adopt appropriate legislation for correcting the effects of such prohibited state laws and state Acts, and thus to render them effectually null, void and innocuous. This is the legislative power conferred upon Congress, and this is the whole of it. It does not invest Congress with power to legislate upon subjects which are within the domain of state legislation; but to provide modes of relief against state legislation or state action of the kind referred to. It does not authorize Congress to create a code of municipal law for the regulation of private rights; but to provide modes of redress against the operation of state laws, and the action of state officers executive or judicial, when these are subversive of the fundamental rights specified in the Amendment. Positive rights and privileges are undoubtedly secured by the 14th Amendment; but they are secured by way of prohibition against state laws and state proceedings affecting those rights and privileges, and by power given to Congress to legislate for the purpose of carrying such prohibition into effect; and such legislation must, necessarily, be predicated upon such supposed state laws or state proceedings, and be directed to the correction of their operation and effect."

In *U. S. v. Harris,* 106 U.S. 629, 27 L.Ed. 290, the Court, quoting from *U. S. v. Cruikshank,* said: "The 14th Amendment prohibits a State from depriving any person of life, liberty or property without due process of law, or from denying to any person the equal protection of the laws; but this provision does not add anything to the rights of one citizen as against another. It simply furnishes an additional guaranty against any encroachment by the States upon the fundamental rights which belong to every citizen as a member of society. The duty of protecting all its citizens in the enjoyment of an equality of rights was originally assumed by the States, and it remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the Amendment guaranties and no more. The power of the National Government is limited to this guaranty."

More than half a century after these cases were decided the Supreme Court of the United States said in *Shelley v. Kraemer,* 334 U.S. 1, 92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R. 2d 441: "Since

the decision of this Court in the *Civil Rights Cases,* 109, U.S. 3, 27 L.Ed. 835, 3 S.Ct. 18 (1883), the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." This interpretation has not been modified: *Collins v. Hardyman,* 341 U.S. 651, 95 L.Ed. 1253; *District of Columbia v. Thompson Co.,* 346 U.S. 100, 97 L.Ed. 1480, 73 S.Ct. 1007; *Williams v. Yellow Cab Co.,* 200 F. 2d 302 (cert. den. 98 L.Ed. 361).

*Dorsey v. Stuyvesant Town Corp.,* 87 N.E. 2d 541, 14 A.L.R. 2d 133, presented the right of a corporation, organized under the New York law to provide low cost housing, to select its tenants, with the right to reject on account of race, color, or religion. The New York Court of Appeals affirmed the right of the corporation to select its tenants. The Supreme Court of the United States denied *certiorari,* 339 U.S. 981, 94 L.Ed. 1385.

The right of an operator of a private enterprise to select the clientele he will serve and to make such selection based on color, if he so desires, has been repeatedly recognized by the appellate courts of this nation. *Madden v. Queens County Jockey Club,* 72 N.E. 2d 697 (N. Y.); *Terrell Wells Swimming Pool v. Rodriguez,* 182 S.W. 2d 824 (Tex.); *Booker v. Grand Rapids Medical College,* 120 N.W. 589 (Mich.); *Younger v. Judah,* 19 S.W. 1109 (Mo.); *Goff v. Savage,* 210 P. 374 (Wash.); *De La Ysla v. Publix Theatres Corporation,* 26 P. 2d 818 (Utah); *Brown v. Meyer Sanitary Milk Co.,* 96 P. 2d 651 (Kan.); *Horn v. Illinois Cent. R. Co.,* 64 N.E. 2d 574 (Ill.); *Coleman v. Middlestaff,* 305 P. 2d 1020 (Cal.); *Fletcher v. Coney Island,* 136 N.E. 2d 344 (Ohio); *Alpaugh v. Wolverton,* 36 S.E. 2d 906 (Va.). The owner-operator's refusal to serve defendants, except in the portion of the building designated by him, impaired no rights of defendants.

The fact that the proprietors of the ice cream parlor contributed to the support of local government and paid a license or privilege tax which license contained no restrictions as to whom the proprietors could serve cannot be construed to justify a trespass, nor is there merit in the suggestion that the complaint on which the warrant of arrest issued, signed by an officer charged with the duty of enforcing the laws, rather than by the injured party, constituted state action denying privileges guaranteed to the defendants by the Fourteenth Amendment. The crime charged was committed in the presence of the officer and after a respectful request to desist. He had a right to arrest. G.S. 15-41.

STATE *v.* CLYBURN, GLENN, GRAY, JONES, MOORE, WILLIS, WILLIAMS.

*Screws v. U. S.,* 325 U.S. 91, 89 L.Ed. 1495; *U. S. v. Classic,* 313 U.S. 299, 85 L.Ed. 1368; and *S. v. Scoggin,* 236 N.C. 19, 72 S.E. 2d 97, cited and relied upon by defendants, appellants, to support their position, have no factual analogy to this case. Nothing said in those cases in any way supports the position taken by defendants in this case.

Defendants insert in their brief what they say is a provision of the code of the City of Durham, enacted in 1940. It is noted, however, that no such ordinance was offered in evidence. The record as brought to us, prepared by appellants and accepted by the State as correct, does not indicate that any such ordinance was offered in evidence or called to the attention of the court, if then in effect. "We cannot take judicial notice of municipal ordinances. 31 C.J.S., Evidence, Section 27." *Fulghum v. Selma,* 238 N.C. 100, 76 S.E. 2d 368; *Toler v. Savage,* 226 N.C. 208, 37 S.E. 2d 485; *S. v. Razook,* 179 N.C. 708, 103 S.E. 67. The manner of proving municipal ordinances is prescribed by statute, G.S. 160-272; G.S. 8-5.

Defendants assign as error the following portion of the charge: "If a person without permission or invitation, express or implied, without legal right or *bona fide* claim of right intentionally enters upon the land of another, and after entering thereon his presence is discovered and he is unconditionally ordered to leave and get off of the property by one in the legal possession thereof, and if he refuses to leave and remains on the land, he is a trespasser from the beginning, and the statute read to you by the Court applies and he is deemed to have been forbidden to enter the property."

The court correctly described a trespasser. *S. v. Cooke,* 246 N.C. 518, 98 S.E. 2d 885; *S. v. Goodson,* 235 N.C. 177, 69 S.E. 2d 242; *Armstrong v. Armstrong,* 230 N.C. 201, 52 S.E. 2d 362; *Lee v. Stewart,* 218 N.C. 287, 10 S.E. 2d 804; *Brame v. Clark,* 148 N.C. 364.

Does the statute, G.S. 14-134, apply to such a trespasser? Defendants maintain it has no application since it only makes criminal an *entry* after being forbidden. The merit, if any, in the position taken is determined by ascertaining the wrong condemned. The denomination of the criminal act and the historic interpretation given to the words used to define the act provide the answer to the question. The statute, first enacted in 1866, is entitled "AN ACT TO PREVENT WILFUL TRESPASSES ON LAND, AND STEALING ANY KIND OF PROPERTY THEREFROM." It is now grouped with other statutes relating to wrongs done to the owners of real estate in a subchapter of our criminal laws entitled "TRESPASSES TO LAND AND FIXTURES." Looking at the titles, it is apparent the Legislature intended to prevent.

the unwanted invasion of the property rights of another. *S. v. Cooke, supra; S. v. Baker,* 231 N.C. 136, 56 S.E. 2d 424. It is not the act of entering or going on the property which is condemned; it is the intent or manner in which the entry is made that makes the conduct criminal. A peaceful entry negatives liability under G.S. 14-126. An entry under a *bona fide* claim of right avoids criminal responsibility under G.S. 14-134 even though civil liability may remain. *S. v. Faggart,* 170 N.C. 737, 87 S.E. 197; *S. v. Wells,* 142 N.C. 590; *S. v. Fisher,* 109 N.C. 817; *S. v. Crosset,* 81 N.C. 579.

What is the meaning of the word "enter" as used in the statute defining criminal trespass? The word is used in G.S. 14-126 as well as G.S. 14-134. One statute relates to an entry with force; the other to a peaceful entry. We have repeatedly held, in applying G.S. 14-126, that one who remained after being directed to leave is guilty of a wrongful entry even though the original entrance was peaceful and authorized. *S. v. Goodson, supra; S. v. Fleming,* 194 N.C. 42, 138 S.E. 342; *S. v. Robbins,* 123 N.C. 730; *S. v. Webster,* 121 N.C. 586; *S. v. Gray,* 109 N.C. 790; *S. v. Talbot,* 97 N.C. 494. The word "entry" as used in each of these statutes is synonymous with the word "trespass." It means an occupancy or possession contrary to the wishes and in derogation of the rights of the person having actual or constructive possession. Any other interpretation of the word would improperly restrict clear legislative intent. The charge as given is the correct interpretation of the statute. There is

No Error.