17856

CITY OF CHARLESTON, Respondent, v. Christopher MITCHELL, John Bailey, Joseph Gerideau, James Gilbert Blake, Andrew Brown, Alvin Delford Latten, Fred Small, Cornelius Fludd, Charles Butler, Francis Johnson, David Paul Richardson, Joseph Jones, Alfred Hamilton, Harvey Gantt, Allen Coley, Kenneth Andrew German, Carolyn Jenkins, Arthuree Singleton, Jenniese Blake, Delores Brown, Annette Graham, Cecile Gordon, Verna Jean McNeill and Minerva Brown, Appellants.

(123 S. E. (2d) 512)

*Messrs. Jenkins & Perry,* of Columbia, and *John H. Wrighten* and *Russell Brown,* of Charleston, *for Appellants,*

*Messrs. Morris D. Rosen* and *Robert L. Clement, Jr.,* of Charleston, *for Respondent,*

December 13, 1961.

Moss, Justice.

The twenty-four appellants, all of whom are Negro high school students, were arrested on April 1, 1960, and charged with the violation of Section 16-386, as amended, of the 1952 Code of Laws of South Carolina, and Section 33-39, 1952 Code of the City of Charleston.

The appellants were tried before the City Recorder in the police court of the City of Charleston, on April 19, 1960. Each of the appellants was found guilty of both charges and

sentenced to pay a fine of Fifty and 00/100 ($50.00) Dollars or to imprisonment for fifteen days on each offense, the sentences in each case to run concurrently. The conviction of each of the appellants was sustained by the Circuit Court. The appellants gave timely notice of intention to appeal to this Court.

The questions involved in this appeal may be summarized as follows: (1) Did the court err in refusing to hold that the warrants charging the appellants with the violation of Section 16-386, as amended, of the 1952 Code of Laws of South Carolina, and of Section 33-39, 1952 Code of the City of Charleston, were vague, indefinite and uncertain and do not plainly and substantially set forth the offenses charged? (2) Did the testimony fail to establish the *corpus delicti* or prove a *prima facie* case? (3) Did the court err in refusing to hold that under the facts of these cases, the arrests and convictions of the appellants were in furtherance of a custom of racial segregation in violation of the Fourteenth Amendment to the Constitution of the United States? Under this question the appellants assert that the enforcement of segregation was by State action and that they were unwarrantedly penalized for exercising their freedom of expression.

The first question for determination is whether the appellants' motion to quash and dismiss the warrants should have been sustained upon the ground that the charge contained in each of said warrants was too vague, indefinite and uncertain, in that they do not substantially apprise them of the offenses charged. The appellants were tried on warrants which were based on an affidavit of the Chief of Police of the City of Charleston. In the first affidavit he avers that the appellants, on April 1, 1960, "did unlawfully, knowingly, and willfully commit a trespass, in that they did refuse to leave the premises and property of S. H. Kress & Company, having been requested and ordered to leave, vacate and remove themselves from said premises, all in violation of Title 16, Section 386, of the Code of Laws

of South Carolina for 1952, as amended, and against the peace and dignity of the said State." The second warrant charged that the appellants, on April 1, 1960, "did unlawfully, knowingly, and willfully hinder, resist, oppose and interfere with an employee of the City of Charleston, namely, William F. Kelly, Chief of Police, in the discharge of his official duties, in that they did refuse to leave the premises and property of S. H. Kress & Company after being ordered and requested to do so by William F. Kelly, Chief of Police, all in violation of Section 33-39 of the Code of the City of Charleston, 1952, and against the peace and dignity of said State."

The pertinent portion of Section 16-386, as amended, of the 1952 Code of Laws of South Carolina, is as follows:

"Every entry upon the * * * lands of another, after notice from the owner or tenant prohibiting such entry, shall be a misdemeanor and be punished by a fine not to exceed one hundred dollars, or by imprisonment with hard labor on the public works of the county for not exceeding thirty days. When any owner or tenant of any lands shall post a notice in four conspicuous places on the borders of such land prohibiting entry thereon, a proof of the posting shall be deemed and taken as notice conclusive against the person making entry as aforesaid for the purpose of trespassing."

Section 33-39, of the 1952 Code of the City of Charleston, provides:

"It shall be unlawful for any person to assault, resist, hinder, oppose, molest or interfere with any employee of the City or of any department or board thereof, or any officer or employee of the police department of the City, in discharge of official duties, under penalty of fine of not less than twenty dollars or not more than one hundred dollars or imprisonment not exceeding 30 days."

Article 1, Section 18, of the 1895 Constitution of this State, provides that in all criminal prosecutions the accused shall have the right "to be fully informed of the nature and

cause of the accusation." This Constitutional right is set forth with reference to criminal prosecutions in a Magistrate's Court in Section 43-111 of the 1952 Code of Laws of South Carolina, as follows: "All proceedings before magistrates in criminal cases shall be commenced on information under oath, plainly and substantially setting forth the offense charged, upon which, and only which, shall a warrant of arrest issue." Section 43-112, of the 1952 Code, provides that the information may be amended at any time before trial. Proceedings before a magistrate are summary in nature. Section 43-113 of the 1952 Code of Laws. We should point out that Section 15-901 of the 1952 Code of Laws gives to the mayor or intendant of the cities and towns of this State all the powers and authority of magistrates in criminal cases for offenses committed within the corporate limits and within the police jurisdiction of the respective cities and towns, as is contained in Section 43-111 of the 1952 Code. Section 15-1561 of the Code gives to the recorder of the police court of the City of Charleston all the powers, duties and jurisdiction of a magistrate.

In the case of *State v. Randolph et al.,* 239 S. C. 79, 121 S. E. (2d) 349, which prosecution originated in a Magistrate's Court, we summarized the rule concerning the right of an accused to be fully informed of the offense charged against him. We said:

"Proceedings before a magistrate are summary in nature. Section 43-113 of the 1952 Code. His jurisdiction to try criminal cases is confined to minor offenses. Many of our magistrates are without legal training. In the preparation of warrants they are not required to conform to the technical precision required in indictments. *Duffie v. Edwards,* 185 S. C. 91, 193 S. E. 211. But it does not follow that the accused may be denied those fundamental rights essential to a fair trial, among which is the right to be informed of the nature of the offense charged against him. In *McConnell v. Kennedy,* 29 S. C. 180, 7 S. E. 76, 80, the Court stated that the manifest object of the statute now forming Section

43-111 of the 1952 Code was 'to require that the offense with which a party was charged should be so set forth, "plainly and substantially," as would enable the party accused to understand the nature of the offense with which he was charged, so that he might be prepared to meet the charge at the proper time.' In *Town of Honea Path v. Wright,* 194 S. C. 461, 9 S. E. (2d) 924, 927, the Court said: 'Without doubt, the administration of the law, and the rights of persons charged with crime can best be served by a due observance of statutory requirements. It is the constitutional right of a person charged with a criminal offense to be fully informed of the nature and cause of the accusation. Article I, Section 18 of the Constitution.' In *Town of Mayesville v. Clamp,* 149 S. C. 346, 147 S. E. 455, 457, Justice Blease, later Chief Justice, stated in a concurring opinion: 'While an accused may be arrested on a warrant that does not fully inform him of the nature and cause of the accusation, he may, when he is brought to trial, demand the information he is entitled to have under the provisions of Section 18 of article 1.' "

In the recent case of *City of Greenville v. Peterson et al.,* (S. C.) 122 S. E. (2d) 826 (filed November 10, 1961), the appellants there were arrested, charged and convicted of trespass, in violation of Section 16-388, as amended, of the 1952 Code of Laws. They contended in this Court that the warrant should have been dismissed upon the ground that the charge contained therein was too indefinite and uncertain as to apprise them of the nature and cause of the accusation against them. In the *Peterson case* the appellants relied upon the authority of *State v. Randolph, supra,* as they do here, where this Court held that it was error to refuse a motion to make the charge more definite and certain in a warrant charging a breach of the peace. We pointed out in the *Randolph case* that a breach of the peace embraces a variety of conduct and the appellants there were entitled to be given such information as would enable them to understand the nature of the offense. As was said in the *Peterson*

*case* "This is not true in the instant case where the charges were definite, clear and unambiguous; further, no motion was made to require the prosecution to make the charge more definite and certain. There is no merit in this contention." The wording of the warrants here was such as to apprise the appellants of the offenses with which they were charged. They were fully informed of the nature and the cause of the accusation against them in accordance with Article 1, Section 18 of the 1895 Constitution of this State, and Section 43-111 of the 1952 Code of Laws. The first warrant charges that on a day certain the appellants committed a trespass in refusing to leave the premises and property of S. H. Kress & Company, having been requested and ordered to vacate and remove themselves from said premises. This warrant then charged such to be a violation of a specific section of the Code. The second warrant heretofore referred to, likewise fully informed the appellants of the nature and cause of the accusation against them. The warrants against the appellants were not vague, indefinite and uncertain. This exception of the appellants is overruled.

S. H. Kress & Company is a private corporation, owning and operating a variety store on King Street in the City of Charleston, South Carolina. Located in said store is a food and lunch counter owned and operated by this private corporation. The record shows that on April 1, 1960, that the appellants entered the premises of S. H. Kress & Company at about 10:45 A. M. and seated themselves at the lunch counter. Shortly after they occupied seats at the lunch counter, such was closed for business. The appellants remained seated at the lunch counter until about 4:30 P. M. at which time the manager of the store approached the group, told them who he was, and requested them to leave the store premises. The request of the manager was ignored and he repeated the request a second time, but the appellants remained seated. Immediately following the two requests of the manager for the appellants to leave the premises of S. H. Kress & Company, William F. Kelly, Chief

of the Charleston Police Department, ordered the appellants to leave the building. Upon their refusal to leave they were placed under arrest. The evidence in the record discloses that the city police department had received information that a bomb was to be exploded in the Kress building. It was after this report was received by the Chief of Police, and such was communicated to the manager of the store, that not only the manager but the Chief of Police requested the appellants to leave and vacate the said store. The Chief of Police testified, "I was urging them for their safety and all others concerned to leave as quickly as possible from the building, that it was urgent that they do so. I then repeated it and said pretty well the same words as I said the first time. Receiving no reply, and in fact no one even turned at that particular point, I asked for their spokesman in the group. No one signified that he or she was. I then told them, advised them, that as Chief of Police of the City of Charleston inasmuch as they have failed to comply with the request of Mr. Watts, Manager of Kress's, it hereby became necessary for me to place them under arrest."

The appellants assert that Section 16-386 of the 1952 Code of Laws has no application since it only makes criminal an entry upon the premises of another "after notice from the owner or tenant prohibiting such entry."

The State of North Carolina has two trespass statutes which have been recently construed by the Supreme Court of that State in connection with "sit-in demonstrations". Section G.S. § 14-134, of the General Statutes of North Carolina, provides: "If any person after forbidden to do so, shall go or enter upon the lands of another, without a license therefor, he shall be guilty of a misdemeanor, * * *." Section 14-126 of the General Statutes of said State, provides: "No one shall make entry into any lands and tenements, or term for years, but in case where entry is given by law; and in such case, not with strong hand nor with multitude of people, but only in a peaceable and easy manner; and if any man do the contrary, he shall be guilty of a misdemeanor."

In the case of *State v. Clyburn,* 247 N. C. 455, 101 S. E. (2d) 295, it appears that the appellants there, who were Negroes, entered the store of the Royal Ice Cream Company and proceeded to the portion of the store set apart for white patrons. They attempted to make a purchase of ice cream and the clerk refused to serve them. Upon their refusal to vacate the premises, they were charged with trespass, in that they did unlawfully refuse to leave the premises reserved for members of the white race. Upon conviction and appeal to the Supreme Court of North Carolina, the appellants contended that the trespass statutes above referred to had no application, since the statutes only make criminal an entry after being forbidden. The contention of the appellants was rejected and the Supreme Court of North Carolina, in disposing of the appellants' contention, said:

"What is the meaning of the word 'enter' as used in the statute defining a criminal trespass? The word is used in G.S. § 14-126 as well as G.S. § 14-134. One statute relates to an entry with force; the other to a peaceful entry. We have repeatedly held, in applying G.S. § 14-126, that one who remained after being directed to leave is guilty of a wrongful entry even though the original entrance was peaceful and authorized. *State v. Goodson, supra* [235 N. C. 177, 69 S. E. (2d) 242] ; *State v. Fleming,* 194 N. C. 42, 138 S. E. 342; *State v. Robbins,* 123 N. C. 730, 31 S. E. 669; *State v. Webster,* 121 N. C. 586, 28 S. E. 254; *State v. Gray,* 109 N. C. 790, 14 S. E. 55; *State v. Talbot,* 97 N. C. 494, 2 S. E. 148. The word 'entry' as used in each of these statutes is synonymous with the word 'trespass.' It means an occupancy or possession contrary to the wishes and in derogation of the rights of the person having actual or constructive possession. Any other interpretation of the word would improperly restrict clear legislative intent."

In the case of *State v. Avent,* 253 N. C. 580, 118 S. E. (2d) 47, it appears that the appellants entered the store of S. H. Kress & Company, in the City of Durham, North Carolina, and seated themselves at the lunch counter. They

were asked to leave and upon their refusal, they were arrested and charged with trespassing. In affirming the conviction of the appellants, the Court reaffirmed its holding in *State v. Clyburn, supra,* saying:

"The statute is also color blind. Its purpose is 'to protect possession only.' *State v. Baker, supra.* [231 N. C. 136, 56 S. E. (2d) 424.] We have repeatedly held in applying G.S. § 14-126 that a person who remains on the land of another after being directed to leave is guilty of a wrongful entry even though the original entrance was peaceful. The word 'entry' as used in each of these statutes is synonymous with the word 'trespass.' "

Our statute, Section 16-386, provides that every entry upon the lands of another, "after notice from the owner or tenant prohibiting such entry," has the same meaning as the North Carolina Statute, Section 14-134 of the General Statutes, which provides if any person after "forbidden to do so, shall go or enter upon the lands of another" shall be guilty of a misdemeanor. The logic and reasoning of the North Carolina Supreme Court, in construing the trespass statute of that State, convinces us that the same rule should be applied in the construction of the trespass statute here under consideration. We think the proper interpretation of our trespass statute requires a rejection of the position asserted by the appellants.

It has been soundly held that although an entry on land may be effected peaceably or even with the permission of the owner, the person making such entry may by reason of subsequent conduct while there be held to be guilty of a forcible trespass. 52 Am. Jur., Trespass, Section 84, at page 895. *State v. Tyndall,* 192 N. C. 559, 135 S. E. 451, 49 A. L. R. 596.

In the case of *State v. Williams,* 76 S. C. 135, 56 S. E. 783, this Court approved the following charge made by the trial Judge:

"I charge you further, as matter of law, that if an officer goes out to arrest another, and even the prosecutor in the case goes along with him, as long as he behaves himself and takes no part in it, he is not a trespasser until he is ordered off of the man's premises he goes on. If he is ordered off, then it is his duty to go, and if he does not go off, then the owner of the premises has the right to use whatever amount of force is necessary to put him off. He has no right to use any unnecessary force, however."

In the case of *Shramek v. Walker,* 152 S. C. 88, 149 S. E. 331, this Court quoted with approval from 2 R. C. L. 559, the following,

"It is a well-settled principle that the occupant of any house, store, or other building, has the legal right to control it, and to admit whom he pleases to enter and remain there, and that he also has the right to expel from the room or building any one who abuses the privilege which has been thus given him. Therefore, while the entry by one person on the premises of another may be lawful, by reason of express or implied invitation to enter, his failure to depart, on the request of the owner, will make him a trespasser and justify the owner in using reasonable force to eject him. The most common cases involving the right of an owner to eject one from his premises who entered lawfully, are those where a person enters a hotel or business place or the conveyance of a common carrier and while therein forfeits his right to remain by his misconduct or failure to comply with the reasonable rules and regulations. On the forfeiture of his right he becomes a common trespasser and may be forcibly ejected on failure to depart after a request to do so. See also 5 C. J., 745." See also 9 A. L. R. 379; 33 A. L. R. 421.

The appellants assert that the court erred in refusing to hold that their arrests and convictions were in furtherance of a custom of racial segregation in violation of the Fourteenth Amendment to the United States

Constitution. It is also asserted that enforcement of segregation in this case was by State action within the meaning of such Fourteenth Amendment.

The appellants assert that since the store of S. H. Kress & Company was open to the public that they were there as business invitees and the refusal to serve them, because of their race, was a denial of their constitutional rights. The appellants do not attack Section 16-386 of our Code as being unconstitutional but contend that their rights were abridged in its application, in that they were invitees and were refused service because of their race. They assert that the use of judicial process here constitutes State action to enforce racial segregation, in violation of their rights under the due process and equal protection clause of the Fourteenth Amendment to the Federal Constitution, and that Section 16-386 of our Code is being unconstitutionally applied for the same purpose.

Section 16-386 of our Code is not a racial segregation one. It forbids any person, irrespective of his race or color, to make entry upon the lands of another after notice from the owner or tenant prohibiting such entry. There is no statute in this State which forbids discrimination by the owner of a restaurant of people on account of race or color. In the absence of a statute forbidding discrimination based on race or color, the rule is well established that an operator of a privately owned restaurant, privately operated in a privately owned building, has the right to select the clientele he will serve and to make such selection based on color or race if he so desires. This rule has been repeatedly recognized by the Appellate Courts of this country. *State v. Clyburn,* 247 N. C. 455, 101 S. E. (2d) 295, and *State v. Avent,* 253 N. C. 580, 118 S. E. (2d) 47, and the cases therein cited. *Randolph v. Commonwealth,* 202 Va. 661, 119 S. E. (2d) 817; *City of Greenville v. Peterson et al., supra.* The holding in these cases is based upon the principle that the Fourteenth Amendment "erects no shield against mere private conduct, however discriminatory

or wrongful", *Shelly v. Kraemer,* 334 U. S. 1, 68 S. Ct. 836, 92 L. Ed. 1161, 3 A. L. R. (2d) 441, and that in the absence of statute the operator of a privately owned business may accept some customers and reject others on purely personal grounds. In the case of *Alpaugh v. Wolverton,* 184 Va. 943, 36 S. E. (2d) 906, this principle was applied in the operation of a privately owned restaurant.

In the case of *State v. Avent,* 253 N. C. 580, 118 S. E. (2d) 47, the North Carolina Supreme Court held that Negro and white students who refused, in the presence of a police officer, to leave the lunch counter of S. H. Kress & Company's privately owned variety store at the order of the manager were guilty of wrongful entry and trespass, and the police officer had the duty to arrest them, and the arrest and judicial process against such students did not constitute State action to enforce racial segregation in violation of the Fourteenth Amendment to the Federal Constitution. In disposing of the contention of the appellants in the *Avent case,* the North Carolina Supreme Court in refusing to upset the convictions of the appellants on the ground that their arrest and trial for trespass constituted State action within the meaning of the Fourteenth Amendment, said:

"Private rights and privileges in a peaceful society living under a constitutional form of government like ours are inconceivable without State machinery by which they are enforced. Courts must act when parties apply to them— even refusal to act is a positive declaration of law—, and, hence, there is a fundamental inconsistency in speaking of the rights of an individual who cannot have judicial recognition of his rights. All the State did in these cases was to give or create a neutral legal framework in which S. H. Kress and Company could protect its private property from trespassers upon it in violation of G.S. § 14-134 and G.S. § 14-126. There is a recognizable difference between State action that protects the plain legal right of a person to prevent trespassers from going upon his land after being for-

bidden, or remaining upon his land after a demand that they leave, even though it enforces the clear legal right of racial discrimination of the owner, and State action enforcing covenants restricting the use or occupancy of real property to persons of the Caucasian race. The fact that the State provides a system of courts so that S. H. Kress and Company can enforce its legal rights against trespassers upon its private property in violation of G.S. § 14-134 and G.S. § 14-126, and the acts of its judicial officers in their official capacities, cannot fairly be said to be State action enforcing racial segregation in violation of the 14th Amendment to the Federal Constitution. Such judicial process violates no rights of the defendants guaranteed to them by Article I, § 17, of the State Constitution. To rule as contended by defendants would mean that S. H. Kress and Company could enforce its rights against White trespassers alone, but not against Negro trespassers and White and Negro trespassers in company. Surely, that would not be an impartial administration of the law, for it would be a denial to the White race of the equal protection of the law. If a landowner or one in possession of land cannot protect his natural, inherent and constitutional right to have his land free from unlawful invasion by Negro and White trespassers in a case like this by judicial process as here, because it is State action, then he has no other alternative but to eject them with a gentle hand if he can, with a strong hand if he must. * * *"

It plainly appears to us from the evidence that the appellants violated Section 16-386, as amended, of the 1952 Code, in that they did unlawfully, knowingly and willfully commit a trespass by refusing to leave the premises of S. H. Kress & Company after being requested so to do. We quote the following from the case of *Randolph v. Commonwealth*, 202 Va. 661, 119 S. E. (2d) 817:

"The defendant next contends that when the owner of the restaurant, through its employee, procured the warrant for

the defendant's arrest, this constituted State action to enforce a discriminatory rule or regulation of the restaurant contrary to the provisions of the Fourteenth Amendment. A similar argument was advanced and rejected in *State v. Clyburn, supra,* 101 S. E. (2d) at page 299; *State v. Avent, supra,* 118 S. E. (2d) at page 54; *Griffin v. Collins, supra* [D. C.] 187 F. Supp. [149] at pages 153, 154. See also, 47 Virginia Law Review 105, 119. Here the purpose of the judicial process is not to enforce a rule or regulation of the operator of the restaurant. Its purpose is to protect the rights of the proprietor who is in lawful possession of the premises and to punish the trespasser, irrespective of his race or color. See *Hall v. Commonwealth, supra,* 188 Va. 72, 49 S. E. (2d) 369."

The fact that the State of South Carolina provides a system of courts where S. H. Kress & Company can enforce its legal rights against trespassers upon its private property in violation of Section 16-386, as amended, of the Code, and the acts of its judicial officers in their official capacities, does not constitute State action enforcing racial segregation in violation of the Fourteenth Amendment to the Constitution of the United States.

The appellants also contend that their convictions should be reversed by this court because the action of the lower court was an interference with their constitutional rights of free speech guaranteed to them by the Fourteenth Amendment. It has been soundly held that freedom of speech or expression is not an absolute right. It must be exercised at proper times and places. *Kovacs v. Cooper,* 336 U. S. 77, 69 S. Ct. 448, 93 L. Ed. 513, 10 A. L. R. (2d) 608. However, the appellants had no constitutional right to exercise their right of free speech as trespassers in the store of Kress & Company in violation of Section 16-386 of the Code. *State v. Avent, supra.* This exception of the appellants is overruled.

The next question for determination is whether there was any evidence to support the convictions of the appellants for a violation of Section 33-39 of the Code of the City of Charleston.

This ordinance makes it unlawful for any person to assault, resist, hinder, oppose, molest, or interfere with any employee of the * * * police department of the city, in discharge of official duties. It appears from the evidence that the manager of the store of Kress & Company twice requested the appellants to leave the store premises. Immediately following this, the Chief of Police of the City of Charleston made a similar request urging the appellants, for their own safety, to leave the premises. The appellants declined or failed to immediately comply with the request of the Chief of Police. There is testimony that the Chief of Police had received information that a bomb was to be exploded in the Kress building. However, the testimony does not show that this information was communicated to the appellants in connection with the request of the Chief of Police that they vacate the premises. As a matter of fact, the Chief of Police testified that the appellants were arrested for their failure to vacate the premises of Kress store when requested so to do by the manager. It was also testified that after the manager requested the appellants to leave the store that they did "nothing" and that when the Chief of Police requested them to leave the store, they did "nothing", but when he told them that they were under arrest, the appellants "all stood up". It was testified that the appellants were not discourteous, did not disobey any order when they were placed under arrest, and they were not loud or boisterous in any way, and the appellants left the store in company of the officers without causing any trouble.

In affirming the convictions of the appellants, the Circuit Court held that the act of trespass was final and complete before the entirely separate act "of interference with a police officer in the discharge of his duty." It thus appears that

the Circuit Judge held that the appellants were guilty of a violation of the above Code because they interfered with the Chief of Police of the City of Charleston in the discharge of his official duty, in that they "did refuse to leave the premises and property of S. H. Kress & Company after being ordered and requested to do so by" said Chief of Police. Did the act of the appellants in doing "nothing" and refusing to leave the premises in question, after being ordered and requested to do so, amount to an unlawful interference by them of the said Chief of Police?

In 47 C. J. S., at page 83, the term "interfere" has been said to import action, not mere inaction, an active rather than a passive condition, and has been defined as meaning to interpose, to prevent some action, sometimes in a bad sense to intermeddle, to check or hamper, and, specifically to do something which hinders or prevents or tends to prevent the performance of legal duty. In its broadest aspects "interfere" bears the significance of "disarrange", "disturb", "hinder".

In *State v. Estes,* 185 N. C. 752, 117 S. E. 581, the defendant was convicted on an indictment charging that he unlawfully and willfully did resist, hinder, delay, obstruct and interfere with an officer of the board of health in the discharge of his duty as such. It appears from the evidence in the cited case that the health officer went to the store of the defendant for the purpose of enforcing certain statutory requirements in regard to toilet facilities in the store which affected public health. The defendant used abusive and profane language towards the officer but did not get up from his desk where he was seated nor did he strike or offer to strike the officer and made no demonstration of violence whatever. In construing the North Carolina statute, which contains the words "willfully interfere with or obstruct" an officer in the discharge of his duty, the Court, in granting a new trial, said:

"To 'interfere' is to check or hamper the action of the officer, or to do something which hinders or prevents or

tends to prevent the performance of his legal duty; and to 'obstruct' signifies direct or indirect opposition or resistance to the lawful discharge of his official duty. * * *"

It appears to us that the conduct of the appellants in refusing obedience to the request of the Chief of Police of the City of Charleston was merely inaction on their part and did not constitute interference with said officer in the discharge of his official duty. We think the Court was in error in refusing to so hold.

What we have heretofore said disposes of the question of whether the evidence establishes the *corpus delicti* or proves a *prima facie* case against the appellants. We do not pass upon the question of whether this issue was properly before us for consideration.

It is the judgment of this Court that the convictions of the appellants for violation of Section 16-386, as amended, of the 1952 Code of Laws of South Carolina is affirmed, and the convictions of the appellants for a violation of Section 33-39 of the 1952 Code of Laws of the City of Charleston is reversed and remanded for entry of a judgment of acquittal.

Affirmed in part and reversed in part.

TAYLOR, C. J., and OXNER, LEGGE and LEWIS, JJ., concur.