Charles Joseph CHALIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 61277.

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 15, 1982.

On Rehearing Jan. 12, 1983.

Rehearing Denied Feb. 23, 1983.

Richard D. West, Gregg W. McCloskey, Houston, for appellant.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann and Gary DiBella, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ROBERTS, CLINTON and McCORMICK, JJ.

## OPINION

ROBERTS, Judge.

A jury found the appellant guilty of delivery of "a controlled substance, namely Phentermine, an isomer of Methamphetamine." The court assessed a punishment of eight years' confinement.

In his first ground of error, the appellant claims phentermine was not intended to be included in the statutory reference to "Methamphetamine, including its . . . isomers . . . ." Texas Controlled Substances Act (V.A.C.S. Article 4476—15), Section 4.02(b)(6). This argument was rejected in *Ex parte Wilson,* 588 S.W.2d 905, 907 (Tex. Cr.App.1979).

In his second ground of error the appellant argues that the State's application of Section 4.02(b)(6) to his conduct denied him liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution, because it was a retroactive application of an unforeseeable construction of the statute by this Court in *Ex parte Ashcraft,* 565 S.W.2d 926 (Tex.Cr. App.1978). *Ashcraft* was the first authoritative holding that possession of phentermine could be punished as possession of "an isomer of methamphetamine." The appellant's delivery of phentermine took place several months before this Court's delivery of *Ashcraft.* The State has relied entirely on *Ashcraft's* construction of the statute, but has not replied to the argument against the retroactive application of it.

The principles of law in this area were set out in *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Bouie and another man were convicted of criminal trespass under a statute which made "entry upon the . . . lands of another, after notice from the owner or tenant prohibiting such entry," a misdemeanor. They had not entered "after notice"; they had received no notice that entry was forbidden when they entered, and they were convicted for remaining after receiving notice to leave. After they engaged in these acts, the state supreme court held for the first time that the statute penalized remaining on land after notice to leave as well as entry on land after notice prohibiting entry. *City of Charleston v. Mitchell,* 239 S.C. 376, 123 S.E.2d 512 (1961), *rev'd,* 378 U.S. 551, 84 S.Ct. 1901, 12 L.Ed.2d 1033 (1964). The state court applied this holding retroactively to affirm the defendants' convictions. The Supreme Court held this was a violation of the Due Process Clause, saying (378 U.S. at 352–355, 84 S.Ct. at 1702) (footnote omitted):

"There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. As the Court recognized in *Pierce v. United States,* 314 U.S. 306, 311 [62 S.Ct. 237, 239, 86 L.Ed. 226], 'judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness.' Even where vague statutes are concerned, it has been pointed out that the vice in such an enactment cannot 'be cured in a given case by a construction in that very case placing valid limits on the statute,' for

'the objection of vagueness is twofold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. The former objection could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss. * * ' Freund, The Supreme Court and Civil Liberties, 4 Vand.L.Rev. 533, 541 (1951). * * *

See Amsterdam, Note, 109 U.Pa.L.Rev. 67, 73–74. n. 34.

If this view is valid in the case of a judicial construction which adds a 'clarifying gloss' to a vague statute, id., at 73, making it narrower or more definite than its language indicates, it must be *a fortiori* so where the construction unexpectedly broadens a statute which on its face had been definite and precise. Indeed, an unforeseeable judicial enlargement of a

criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one 'that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action,' or 'that *aggravates a crime,* or makes it *greater* than it was, when committed.' *Calder v. Bull,* [3 U.S.] 3 Dall. 386, 390 [1 L.Ed. 648]. If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. Cf. *Smith v. Cahoon,* [283] U.S. 553, 565 [51 S.Ct. 582, 586, 75 L.Ed. 1264]. The fundamental principle that 'the required criminal law must have existed when the conduct in issue occurred,' Hall, General Principles of Criminal Law (2d ed. 1960), at 58–59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect. Id., at 61.

"The basic due process concept involved is the same as that which the Court has often applied in holding that an unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question. See, e.g., *Wright v. Georgia,* 373 U.S. 284, 291 [83 S.Ct. 1240, 1245, 10 L.Ed.2d 349]; *N.A.C.C.P. v. Alabama,* 357 U.S. 449, 456–458 [78 S.Ct. 1163, 1168, 2 L.Ed.2d 1488]; *Barr v. City of Columbia,* 378 U.S. 146 [84 S.Ct. 1734, 12 L.Ed.2d 766]. The standards of state decisional consistency applicable in judging the adequacy of a state ground are also applicable, we think, in determining whether a state court's construction of a criminal statute was so unforeseeable as to deprive the defendant of the fair warning to which the Constitution entitles him. In both situations, 'a federal right turns upon the status of state law as of a given moment in the past—or, more exactly, the appearance to the individual of the status of state law as of that moment * * *.' 109 U.Pa.L.Rev., supra, at 74, n. 34. When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law 'in its primary sense of an opportunity to be heard and to defend [his] substantive right.' *Brinkerhoff-Faris Trust & Sav. Co. v. Hill,* 281 U.S. 673, 678 [50 S.Ct. 451, 453, 74 L.Ed. 1107]. When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime. Applicable to either situation is this Court's statement in Brinkerhoff-Faris, supra, that '[i]f the result above stated were attained by an exercise of the state's legislative power, the transgression of the due process clause of the Fourteenth Amendment would be obvious,' and 'The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid * * * state statute.' Id., 281 U.S. at 679–680 [50 S.Ct. at 453]."

We have recognized and applied these principles of due process. In *Ex parte McAtee,* 586 S.W.2d 548 (Tex.Cr.App.1979), the State argued that this Court should abandon its consistent rule that a conviction which had been used once to enhance punishment to a mandatory life term could not be used again for that purpose.[1] The Court noted that, even if it changed the rule, it would be a denial of due process to apply the new rule retroactively. *Id.* at 550.

---

**1.** The Legislature changed this rule by enacting V.T.C.A. Penal Code sec. 12.46.

The only question, then, is whether our holding in *Ex parte Ashcraft,* 565 S.W.2d 926 (Tex.Cr.App.1978), that possession of phentermine could be penalized under Section 4.02(b)(6) of the Texas Controlled Substances Act (as an "isomer of methamphetamine") was so unforeseeable a construction that its retroactive application to the appellant would violate the Due Process Clause. We hold that it was. None of the legislative, executive, or judicial actions before *Ashcraft* suggested that Section 4.02(b)(6) applied to phentermine. Indeed, those actions indicated that phentermine was controlled quite differently from methamphetamine and its isomers.

Methamphetamine and its isomers have been in Schedule II of the federal Controlled Substances Act (Pub.L. No. 91–513, Title II, 84 Stat. 1236) from the beginning, and they are there now. 21 U.S.C. Section 812(c), Schedule II(c); 21 C.F.R. Section 1308.12(d)(2) (1981). They have also been in Schedule II of the Texas Controlled Substances Act (V.A.C.S. Article 4476–15) from the beginning, and they are there now. *Id.* Section 2.04(e)(2); *Attorney General's Crime Prevention Newsletter,* October, 1981, p. 5.[2] The criteria for a substance's being in Schedule II are that it has a high potential for abuse which may lead to severe psychological or physical dependence, although (unlike substances in Schedule I) it has a currently accepted medical use in the United States. 21 U.S.C. Section 812(b)(2); Texas Controlled Substances Act Section 2.11. Methamphetamine and its isomers are in Penalty Group 1, carrying the most severe penalties, under the Texas Controlled Substances Act, Section 4.02(b)(6).[3]

Phentermine, on the other hand, initially was not controlled under any schedule. 38 Federal Register 12127 (1973). In Texas it was controlled under the "Dangerous Drugs Act," V.T.C.S. Article 4476–14, which made its possession a misdemeanor. The Director of the Bureau of Narcotics and Dangerous Drugs of the United States Department of Justice added phentermine to Schedule IV under the Federal Controlled Substances Act. 38 Federal Register 18014 (1973). He had proposed originally to add it to Schedule III, 38 Federal Register 12127 (1973), but eventually added it to Schedule IV because it met the criteria for that schedule: a lower potential for abuse and psychological dependence than the substances in Schedule III, which (in turn) have a lower potential for abuse and dependence than those in Schedule II.[4] 38 Federal Register 18014 (1973). The Texas Commissioner of Health, who operates under the same criteria,[5] followed the federal lead and put phentermine in Schedule IV under the Texas Act on August 28, 1973. *Riddle v. State,* 560 S.W.2d 642, 644 n. 2 (Tex.Cr.App.1977). None of these legislative and executive actions could lead one to believe that phentermine would be controlled as an isomer of methamphetamine.[6]

A judicial voice was added to the chorus when, on November 2, 1977, this Court de-

---

**2.** Section 2.16 of the Texas Controlled Substances Act requires the Commissioner of Health to republish the schedules annually by filing a certified copy with the Secretary of State. No other official publication is required. The Texas Register carries only a notice that a copy of the schedule is available for public inspection at 1100 West 49th Street, Austin. 6 Texas Register 3699 (1981).

**3.** The Texas Controlled Substances Act is unlike the federal Controlled Substances Act in that changes in the Texas schedules do not effect changes in criminal penalties. Under the Texas Act, changes in schedules affect only the regulatory scheme. Criminal penalties may be affected only by legislative action on the separate "penalty groups" in Section 4.02.

**4.** The criteria for Schedule III are that the substance have a potential for abuse less than the substances in Schedules I and II, that it have a currently accepted medical use, and that its abuse may lead to moderate or low physical dependence or high psychological dependence. 21 U.S.C. sec. 812(b)(3).

**5.** *Compare* Texas Controlled Substances Act secs. 2.10–2.14 *with* 21 U.S.C. sec. 812(b).

**6.** The Legislature has continued to draw a clear distinction between phentermine and isomers of methamphetamine by adding phentermine to Penalty Group 3 while leaving isomers of methamphetamine in the much more severe Penalty Group 1. 1979 Texas Gen.L. ch. 598, sec. 6.

cided that the Commissioner's addition of phentermine to Schedule IV of the Texas Controlled Substances Act had the effect of removing phentermine from the scope of the "Dangerous Drugs Act" [7] but did not create any penalty under the Texas Controlled Substances Act. *Riddle v. State,* 560 S.W.2d 642. Therefore, the Court held that "[under] the Controlled Substances Act, there is no penalty for the possession or delivery of phentermine." *Id.* at 644. *Accord, Lumberas v. State,* 560 S.W.2d 644 (Tex.Cr.App.1977). This judicial decision certainly would not lead one to believe that there was a penalty for the delivery of phentermine.

So things stood on November 18, 1977, when the appellant delivered 181 capsules of phentermine. The legal landscape was bare of any indication that Section 4.02(b)(6) of the Texas Controlled Substances Act would be construed to include phentermine within the scope of "methamphetamine, including its ... isomers ...." That construction of the statute in *Ex parte Ashcraft,* 565 S.W.2d 926 (Tex.Cr.App.1978), must be called unforeseeable. Therefore it would be a denial of due process to apply it retroactively to any act committed before the date of its delivery.

The judgment is reversed, and the cause is remanded to the trial court with directions to dismiss the indictment.

McCORMICK, J., dissents without written opinion.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

TEAGUE, Judge.

On original submission, a panel of this Court held that the construction of the Tex-

as Controlled Substances Act, see Art. 4476–15, V.A.C.S., which allowed prosecution for the delivery or possession of the substance phentermine, as an isomer of methamphetamine, see *Ex parte Ashcraft,* 565 S.W.2d 926 (Tex.Cr.App.1978), could not be reasonably foreseen, and thus prosecution under this theory had an *ex post facto* effect on any delivery or possession of phentermine which occurred prior to our rendition of *Ex parte Ashcraft,* and served to deny appellant here of the due process of law guaranteed by the United States Constitution. See *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

In its motion for rehearing, the State asserts: 1) the panel opinion allows prosecution for salts, isomers, and salts of isomers of substances set forth in the Controlled Substances Act only after a judicial edict that such variations of a designated substance are included in the Act's proscriptions, resulting in an untenable result; 2) there is no showing in the record that appellant knew that the substance he delivered was "phentermine", let alone an "isomer of methamphetamine", so lack of notice, pre-*Ashcraft,* is not relevant; and 3) *Ashcraft* was not an unforeseeable construction of a plain, unambiguous, and narrowly-drawn statute, such that it amounted to "judicial legislation." The State thus argues that *Bouie v. City of Columbia,* supra, is inapplicable to this cause.

We disagree with the State's arguments and will overrule its' motion for rehearing.

Resolution of the issues raised in this cause requires analysis of *ex post facto* law, and a review of the Controlled Substances Act as it pertains to the substance phentermine.

---

7. At the time in question, the definition of "dangerous drugs" in the "Dangerous Drugs Act" included only certain drugs and devices there were not included in Schedules I through V of the Texas Controlled Substances Act. 1973 Texas Gen.L. ch. 429, sec. 6.03(a). This gave the Commissioner of Health the power to remove a drug from the "dangerous drugs" category by adding it to a Schedule of the Texas Controlled Substances Act. The Commissioner lost this power when the definition of "dangerous drugs" was amended to include only certain drugs and devices that are not included in Penalty Groups I through IV of the Texas Controlled Substances Act. 1979 Texas Gen.L. ch. 90, sec. 8. Unlike Schedules, Penalty Groups cannot be changed by the Commissioner; they can be changed only by legislative act.

## I.  EX POST FACTO LAW

■ Although the *ex post facto* clause of the United States Constitution "is addressed at legislative action only," and does not reach erroneous or inconsistent decisions by the courts, *Frank v. Mangum,* 237 U.S. 309, 344, 35 S.Ct. 582, 59 L.Ed. 969 (1915), the principles embodied in the clause are applicable to judicial actions through the Due Process Clause of the Fifth Amendment to the Constitution. *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *Bouie v. City of Columbia,* supra; also see *Douglas v. Buder,* 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973).

■ *Ex post facto* considerations come into play when legislation or judicial action detrimentally affects a person, and the legislation or judicial action relates to acts of that person committed before the legislation came into force or before the judicial action occurred. *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). These considerations affect only substantive, not procedural, matters. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In other words, legislation and judicial action may not retroactively subject a person's actions to criminal prosecution, see *Bouie v. City of Columbia,* supra, and may not retroactively subject criminal actions to a potentially more onerous punishment, see *Weaver v. Graham,* supra, but may change the procedures whereby it is determined whether a person has committed a criminal act, or what punishment is appropriate, see *Dobbert v. Florida,* supra.

■ Judicial action must be analyzed for its *ex post facto* effect where a court interprets narrow and precise legislation in a manner which cannot be reasonably foreseen, *Bouie v. City of Columbia,* supra, or when a court is interpreting legislation that is broad and sweeping in its language, such

that judicial interpretation is necessary to define its boundaries, and a subsequent opinion expands the boundaries set out in the previously controlling opinion beyond what could be reasonably foreseen. *Marks v. United States,* supra. In a similar vein, legislation which is unnecessarily complex, such as the Controlled Substances Act, frequently requires judicial interpretation to define what actions are covered within its language, as is demonstrated by this Court's opinions in *Riddle v. State,* 560 S.W.2d 642 (Tex.Cr.App.1977); *Lumberas v. State,* 560 S.W.2d 644 (Tex.Cr.App.1977), and *Ex parte Ashcraft,* supra.

Both *Riddle* and *Lumberas,* supra, held that, as of August 28, 1973, neither possession nor delivery of phentermine was subject to any penalty. However, *Ex parte Ashcraft,* supra, effectively overruled both *Riddle* and *Lumberas,* supra, holding that *possession or delivery of phentermine could be prosecuted as an isomer of methamphetamine*—if such was both alleged and proved. Appellant in this cause delivered 181 capsules of phentermine after we issued our opinions in *Riddle* and *Lumberas,* supra, but before *Ex parte Ashcraft,* supra, was decided.[1] To decide this cause it is thus necessary to ask the question: Could appellant have reasonably foreseen the holding in *Ex parte Ashcraft*? The answer to this question: A resounding *NO.*

## II.  FORESEEABILITY OF ASHCRAFT

The Controlled Substances Act came into effect on August 27, 1973. On that date phentermine was not listed by name in either the Dangerous Drug Act, Art. 4476–14, V.A.C.S., or anywhere within the Act, although it was indirectly included in the Act as an isomer of methamphetamine. Isomers of methamphetamine were, and still are, included under Schedule II, subsection

---

1. The date of appellant's offense was November 18, 1977. *Ex parte Ashcraft,* supra, was handed down by a panel of this Court on April 26, 1978. The defendant's motion for rehearing was denied without opinion on June 7, 1978.

In pertinent part, the indictment in this cause alleges that the appellant did "intentionally and knowingly deliver to Eddie Hebisen, a controlled substance, namely Phentermine, an isomer of Methamphetamine."

(d)(2),[1a] and under Penalty Group I, subsection (6), so possession and delivery of phentermine were then punishable under Sections 4.04 and 4.03 of the Act, respectively. However, the next day, August 28, 1973, the Commissioner of Health, pursuant to Sections 2.09 and 2.13 of the Act, placed phentermine, by name, in Schedule IV, subsection (d)(2), thereby evidencing a judgment that phentermine had a lower potential for abuse than the general class of isomers of methamphetamine, which have at all times been maintained in Schedule II. See the panel opinion in this cause and Judge Clinton's concurring opinion in *Ex parte Wilson,* 588 S.W.2d 905 (Tex.Cr.App. 1979), and his dissenting opinion in *Grady v. State,* 634 S.W.2d 316 (Tex.Cr.App.1982).

■■ It is well settled that when a general provision conflicts with a special or local provision, the special or local provision controls unless there is a clear indication that the general provision is to prevail. *Ex parte Harrell,* 542 S.W.2d 169 (Tex.Cr.App. 1976); Art. 5429b–2, Sec. 3.06, V.A.C.S. (The Code Construction Act). Thus, when both a proscription for a general class of acts, such as theft, and one for a specific form of that general class of offenses, such as welfare fraud, conflict as to the range of punishment, the more specific statute will prevail. See *Tawfik v. State,* 643 S.W.2d 127 (1982); *Williams v. State,* 641 S.W.2d 236 (1982; rehearing denied November 24, 1982; *Jones v. State,* 552 S.W.2d 836 (Tex.Cr.App.1977).

An analogous situation exists within the Controlled Substances Act, in that different controlled substances are deemed to constitute varying degrees of harm to society in their illicit uses, so differing punishments are authorized for the illicit use of the various controlled substances. When the

Commissioner of Health classified phentermine by name within Schedule IV, phentermine was determined to be less harmful than the general class of isomers of methamphetamine listed in Schedule II. It was therefore reasonable to believe that possession and delivery were not to be punished as isomers of methamphetamine, despite the failure to list phentermine within any Penalty Group. The failure to include phentermine within a Penalty Group cannot necessarily be viewed as a mere oversight, in that by its inclusion within a Schedule, phentermine became a controlled substance, Sec. 2.01, bringing it within the controls established by Subchapter 3 of the Act, and creating offenses involving it under Sections 4.08 and 4.09.

■ Thus, a reasonable interpretation of the law subsequent to the inclusion of phentermine within Schedule IV, but prior to *Ex parte Ashcraft,* supra, was that delivery of phentermine was not an offense[2] and possession of phentermine was an offense, but with no penalty,[3] except as it may have related to commercial, see Sec. 4.08, or fraud, see Sec. 4.09, offenses. The Court's opinions of *Riddle* and *Lumberas,* supra, serve to support such a view of law.[4] The holding of *Ex parte Ashcraft,* supra, therefore, could not have been reasonably foreseen by the appellant.

## III. ACTUAL KNOWLEDGE OF THE STATUS OF THE LAW

We do not believe it matters whether appellant had actual knowledge of the status of the law at the time he delivered the methamphetamine because of the following principle of law:

The determination whether a criminal statute provides fair warning of its prohi-

1a. Unless otherwise noted, all section references hereinafter refer to the Texas Controlled Substances Act, supra.

2. Under Sec. 4.03, only delivery of controlled substances listed in Penalty Groups 1–4 are offenses.

3. Under Sec. 4.04, possession of any controlled substance is an offense unless obtained pursuant to a valid physician's order, but no penalty attaches unless the substance is in a Penalty Group.

4. Thus it does not matter that the offense occurred before the mandates in *Riddle* and *Lumberas* had been issued.

bitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an *ad hoc* appraisal of the subjective expectations of particular defendants. *Bouie v. City of Columbia,* supra, fn. 5.

## IV. FAILURE TO SPECIFICALLY NAME A SUBSTANCE WITHIN A PENALTY GROUP

The failure to specifically name a substance within a Penalty Group does not prevent prosecution for its delivery or possession if it is otherwise included in a Penalty Group, provided the reason it is included is both alleged and proved, see *Wilson v. State,* supra, unless the substance is specifically named in another Schedule or Penalty Group. It is only in the latter situation that a judicial decision, (that notwithstanding its inclusion in a Schedule, the failure to specifically include a controlled substance in a Penalty Group allows its prosecution under a broader, general classification), must be limited so that it does not serve as an *ex post facto* law.

## V. OUR CONCLUSION AND HOLDING

In light of the foregoing, due process of law does not allow prosecution for possession or delivery of phentermine under Sections 4.03 and 4.04 of the Controlled Substances Act, if the offense occurred between the time when *Riddle* and *Lumberas,* supra, were decided and when *Ex parte Ashcraft,* supra, was decided.

We therefore find that the panel opinion was correctly decided. The State's motion for rehearing is overruled.

W.C. DAVIS, McCORMICK and CAMPBELL, JJ., dissent.